## YONLEY v. LAVENDER.

Where a statute of a State places the whole estate, real and personal, of a decedent within the custody of the Probate Court of the county, so that the assets may be fairly and equally distributed among creditors, without distinction as to whether resident or non-resident, a non-resident creditor may get a judgment in a Federal court against the resident executor or administrator, and come in on the estate according to the law of the State for such payment as that law, marshalling the rights of creditors, awards to debtors of his class. But he cannot because he has obtained a judgment in the Federal court, issue execution and take precedence of other creditors who have no right to sue in the Federal courts ; and if he do issue execution and sell lands, the sale is void.

ERROR to the Supreme Court of Arkansas; the case being thus :

By the constitution and laws of Arkansas the probate of wills and the grant of letters testamentary and of administration, are matters wholly within the jurisdiction of the Probate Court. One statute thus enacts :

"All actions commenced against any executor or administrator after the death of the testator or intestate, shall be considered demands legally exhibited against such estate from the time of serving the original process on the executor or administrator, and shall be classed accordingly.*

"All demands against any estate shall be paid by the executor or administrator in the order in which they are classed; and no demand of one class shall be paid until the claims of all previous classes are satisfied; and if there be not sufficient to pay the whole of any one class, such demands shall be paid in proportion to their amounts, *which apportionment shall be made by the Court of Probate.*"

Under this statute, the courts of Arkansas have decided,† that the legal effect of granting letters testamentary or of administration is to place the whole estate, real and personal, within the custody of the law, and leave it there

---

* Gould's Digest, chapter 4, §§ 101, 120.

† Hornor v. Hanks, 22 Arkansas, 572; Yonley v. Lavender, 27 Id. 252.

until the administration has been completed; that in this way the assets are preserved, so that there may be a fair and equal division of them among the several creditors, according to a scale of priority fixed by law, there being no distinction between resident and non-resident creditors; that all demands against deceased persons, which are not liens upon specific property before the death of the debtor, can only be collected by being brought under the administration of the Probate Court, and that while it is true that the debtor is not compelled to resort to the Probate Court to settle the existence of his debt, but may, by suit in any court of competent jurisdiction, obtain judgment on it, the effect of this judgment is to establish the demand against the estate, and to remit it to the Probate Court for classification by the administrator and payment under the order of the court, either in whole or in part, according to the rule under which the rights of creditors are marshalled; that it cannot be enforced in the ordinary mode, by execution, as if rendered against a living person. "If it could be"—say the courts of Arkansas—"the statutory provision relating to all estates, whether solvent or insolvent, 'that all demands against estates shall be paid by the executor or administrator in the order in which they are classed,' and 'that no demand of any class shall be paid until the claims of all previous classes are satisfied,' would be rendered of no effect, and the whole policy of the law on the subject defeated."

Such being the law of the State in respect to judgments obtained against the estates of deceased persons in the courts of the State, the inquiry in the present case was whether a different rule was to be applied to judgments of the Federal courts. This present case was thus:

One Du Bose, having lands in the county of Arkansas, in the State of that name, died in October, 1869, and a certain Halleburton was appointed the administrator of his estate. Halleburton did nothing in the way of discharging his duty. He took no account of debts and assets, did not convert the property into money, and at the end of three years, the term which a statute in Arkansas, governing the subject, pre-

scribes as that when the administrator ought to have his estate settled, things remained as he had found them. Hereupon, a certain Lavender was appointed administrator *de bonis non* in his place.

In this state of things, Auguste Gautier, a citizen of Louisiana, brought suit in the Circuit Court of the United States for the Eastern District of Arkansas against Lavender as administrator, obtained judgment against him, and, at a sale under an execution issued on this judgment, one Yonley, who seems to have been the attorney of record, bought certain lands belonging to the estate of Du Bose, situate in Arkansas County, in the State of the same name. These proceedings took place several years after the administration of Du Bose's estate had commenced, and while it was being carried on in Arkansas County under the administration laws of the State. Shortly after Yonley purchased the land he brought an action of ejectment in the proper State court to dispossess the administrator, which resulted adversely to him, and the Supreme Court of the State, on appeal, affirmed the judgment of the lower court. It was to revise this judgment that the present writ of error was brought.

*Mr. W. M. Rose, for the plaintiff in error:*

The jurisdiction of the Federal court to render the judgment cannot be denied, and that jurisdiction being granted, its process, issued for the purpose of enforcing the judgment, was valid.

A leading case is *Boyle* v. *Zacharie*.* Story, J., there said:

"Writs and executions issuing from the courts of the United States, in virtue of these provisions, are not controlled or controllable in their general operation and effect by any collateral regulations and restrictions which the State laws have imposed upon State courts to govern them in the actual use, suspension, or superseding of them. Such regulations and restrictions are exclusively addressed to the State tribunals, and have no efficacy in the courts of the United States, unless adopted by them."

---

* 6 Peters, 658.

And this doctrine is declared in numerous cases* since. *Payne* v. *Hook*,† seems conclusive in the matter.

*Mr. A. H. Garland, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

The several States of the Union necessarily have full control over the estates of deceased persons within their respective limits, and we see no ground on which the validity of the sale in question can be sustained. To sustain it would be in effect to nullify the administration laws of the State by giving to creditors out of the State greater privileges in the distribution of estates than creditors in the State enjoy. It is easy to see, if the non-resident creditor, by suing in the Federal courts of Arkansas, acquires a right to subject the assets of the estate to seizure and sale for the satisfaction of his debt, which he could not do by suing in the State court, that the whole estate, in case there were foreign creditors, might be swept away. Such a result would place the judgments of the Federal court on a higher grade than the judgments of the State court, necessarily produce conflict, and render the State powerless in a matter over which she has confessedly full control. Besides this it would give to the contract of a foreign creditor made in Arkansas a wider scope than a similar contract made in the same State by the same debtor with a home creditor. The home creditor would have to await the due course of administration for the payment of his debt, while the foreign creditor could, as soon as he got his judgment, seize and sell the estate of his debtor to satisfy it, and this, too, when the laws of the State in force when both contracts were made provided another mode for the compulsory payment of the debt. Such a difference is manifestly unjust and cannot be supported. There is no question here about the regulation of process by the State to the injury of the party suing in the Federal court.

---

* Suydam *v.* Broadnax, 14 Peters, 75; Hyde *v.* Stone, 20 Howard, 175; Shelby *v.* Bacon, 10 Id. 70; Riggs *v.* Johnson County, 6 Wallace, 187.

† 7 Wallace, 429.

The question is whether the United States courts can execute judgment against the estates of deceased persons in the course of administration in the States, contrary to the declared law of the State on the subject. If they can, the rights of those interested in the estate who are citizens of the State where the administration is conducted are materially changed, and the limitation which governs them does not apply to the fortunate creditor who happens to be a citizen of another State. This cannot be so. The administration laws of Arkansas are not merely rules of practice for the courts, but laws limiting the rights of parties, and will be observed by the Federal courts in the enforcement of individual rights. These laws, on the death of Du Bose and the appointment of his administrator, withdrew the estate from the operation of the execution laws of the State and placed it in the hands of a trustee for the benefit of creditors and distributees. It was thereafter in contemplation of law in the custody of the Probate Court, of which the administrator was an officer, and during the progress of administration was not subject to seizure and sale by any one. The recovery of judgment gave no prior lien on the property, but simply fixed the status of the party and compelled the administrator to recognize it in the payment of debts. It would be out of his power to perform the duties with which he was charged by law if the property intrusted to him by a court of competent jurisdiction could be taken from him and appropriated to the payment of a single creditor to the injury of all others. How can he account for the assets of the estate to the court from which he derived his authority if another court can interfere and take them out of his hands? The lands in controversy were assets in the administrator's hands to pay all the debts of the estate, and the law prescribed the manner of their sale and the distribution of the proceeds. He held them for no other purpose, and it would be strange indeed if State power was not competent to regulate the mode in which the assets of a deceased person should be sold and distributed.

This case falls within the principle decided by this court in

*Williams* v. *Benedict et al.*\* In Mississippi the Orphans' Court has jurisdiction only over the estate of a deceased person in case it turns out to be insolvent, when it audits the claims against the estate, directs the sale of the property, and distributes the proceeds equally among all the creditors. Before the adjudication of insolvency by the Orphans' Court Benedict had obtained a judgment against Williams, the administrator of one Baldwin, in the District Court for the Northern District of Mississippi, and levied an execution on property upon which the judgment would have been a lien if the estate had not been insolvent. On a bill filed by the administrator to enjoin the execution, it was insisted among other things that the proceedings in the Orphans' Court were no bar to the proceedings in the United States court, and so the district judge thought, but this court held otherwise, and decided " that the jurisdiction of the Orphans' Court had attached to the assets; that they were *in gremio legis,* and could not be seized by process from another court." And the court say that " if the marshal were permitted to seize them under an execution, it would not only cause manifest injustice to be done to the rights of others, but be the occasion of an unpleasant conflict between courts of separate and independent jurisdiction."

If the Orphans' Court of Mississippi, whose jurisdiction attaches on the ascertained insolvency of an estate, is saved from the interference of another court, surely the Probate Court of Arkansas, vested with jurisdiction on the death of the testator or intestate, whether the estate be solvent or insolvent, is entitled to equal protection.

It is true that the court in *Williams* v. *Benedict* expressly reserve the question whether State legislatures can in *all* cases compel foreign creditors to seek their remedy against the estates of deceased persons in the State courts, to the exclusion of the jurisdiction of the Federal courts, but these remarks were made, not to express a doubt of the correctness of the decision in the case before the court, but to

---

\* 8 Howard, 107.

guard the rights of suitors in the courts of the United States, if a case should arise where State legislation had discriminated against them. It is possible, though not probable, that State legislation on the subject of the estates of decedents might be purposely framed so as to discriminate injuriously against the creditor living outside of the State; but if this should unfortunately ever happen the courts of the United States would find a way, in a proper case, to arrest the discrimination, and to enforce equality of privileges among all classes of claimants, even if the estate were seized by operation of law and intrusted to a particular jurisdiction. The legislation of Arkansas on this subject, instead of being unfriendly, is wise and just. All creditors are placed upon an equitable foundation, and judgments obtained in the courts of the United States have the same effect as judgments obtained in the courts of the State. The law simply places the assets beyond the reach of ordinary process, for the equal benefit of all persons interested in them, and all that is asked is that the construction of this law adopted by the State tribunals shall be the rule of decision in the Federal courts. The Federal court in Arkansas, in entertaining the suit of Gautier, recognized the power of the State to appoint an administrator and hold him responsible for the proper administration of the estate. If so, how can it reject the authority of the State to distribute the estate in accordance with a scale applicable to all creditors alike?

There is no difference in principle on the point we are considering between the administration and the insolvent laws of a State. In the case of the *Bank of Tennessee* v. *Horn,*\* this court held that by the law of Louisiana the estate of the insolvent vested in the creditors, to be administered by the syndic, as their trustee, and that an execution issued on a judgment obtained in the Circuit Court of the United States for the Eastern District of Louisiana, after the cession had been accepted and the syndic appointed by the

---

\* 17 Howard, 160.

creditors, could not be levied on the property of the insolvent, although the suit was pending when the proceedings in insolvency were begun. The property had been seized by the operation of the law of the State, and was being administered for the benefit of creditors, and when the bank obtained a judgment the insolvent had no interest in the property subject to levy and sale. So in this case the law vested the assets of Du Bose's estate in a trustee, to be administered and sold for the benefit of creditors and distributees, and when the judgment was rendered against the administrator, the assets being held by him solely in his character as trustee, were no more subject to seizure and sale than they were when held by the trustee of an insolvent estate.

The point decided in *Payne* v. *Hook*, relied upon by the plaintiff in error, does not touch the question at issue. The Circuit Court of the United States for the District of Missouri, sitting as a court of chancery, as an incident to its power to enforce trusts, took jurisdiction of a bill filed by Mrs. Payne to compel the administrator of her brother's estate to account and distribute the assets in his hands.

It was contended, as the complainant, were she a citizen of Missouri, could only obtain relief through the local Court of Probate, that she had no better right because of her citizenship in Virginia; but this court held that the equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses; is subject to neither limitation nor restraint by State legislation, and that a bill stating a case for equitable relief, according to the received principles of equity, would be sustained, although the court of the State, having general chancery powers, would not entertain it. The bill charged gross misconduct on the part of the administrator, and one of its main objects was to obtain relief against these fraudulent proceedings. This relief was granted, and the administrator compelled faithfully to carry out the trust reposed in him, and to pay to the complainant the distributive share of the estate of her brother, according to the laws of Missouri.

No greater rights in the estate were adjudged to her than were secured by the law of the State, and if she had been a creditor, instead of a distributee, and sought to obtain a preference over a local creditor, we think it safe to say her bill would have been dismissed. The powers of courts of equity are not in issue in the present suit, nor is there any question presented about restraining or limiting them.

The laws of Arkansas required an administrator to make final settlement of his administration within three years from the date of his letters. The administrator of Du Bose not only failed to discharge this duty, but neglected even to convert the assets of the estate into money, in order to pay debts. Gautier was not compelled to resort to the local Probate Court to secure the performance of these obligations, but could, had he chosen, have invoked the equity powers of the Circuit Court for the District of Arkansas, to obtain a suitable measure of redress. This he could have obtained in less time than it has taken to conduct this litigation; but this measure of redress would only have placed him on an equality with other creditors, as prescribed by the laws of Arkansas. It would in no event have diverted the assets, so that his debt should have been satisfied to the exclusion of other creditors equally meritorious.

JUDGMENT AFFIRMED.