---

## DODD and others v. GHISELIN.[1]

*(Circuit Court, E. D. Missouri. April 12, 1886.)*

1. JURISDICTION—SUIT BY GUARDIAN.
   Where a minor sues by his guardian, the citizenship of the former determines the jurisdiction of the court.

2. EXECUTORS AND ADMINISTRATORS—CONNIVANCE AT IMPROPER CLASSIFICATION OF CLAIMS.
   Where an administrator, by collusion and connivance, aids in having claims placed in a higher class than that in which they belong, and in that way prevents any thing being left for other claims of the same sort, properly classed, he is liable to holders of the latter claims for their share of the amount diverted, and may be sued in this court therefor.

3. SAME.
   It is unnecessary for the claimants wronged, to await the final settlement of the estate before suing, even where by so doing they could obtain a remedy in the probate court by a restatement of the account.

4. SAME—STATE LAWS BINDING.
   State laws providing for the settlement of estates of deceased persons are binding upon federal courts.

In Equity. Demurrer to bill.

*L. B. Valliant*, for complainants.

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

*Given Campbell,* for defendant.

BREWER, J., (*orally.*) In the case of Dodd and others against Ghiselin, administrator with the will annexed, there is a demurrer to the bill—*First,* on the ground that this court has no jurisdiction, by reason of the citizenship of the parties; *second,* that there is a defect of parties; *third,* that there is no equity in the bill.

The bill is brought by two minors, citizens of the state of Texas, by their next friend and curator, the latter being a citizen of the state of Missouri, against the defendant, a citizen of Missouri, and the claim is that the parties litigant are the curator on the one side and the administrator on the other, both citizens of Missouri. The case of *Coal Co.* v. *Blatchford,* 11 Wall. 172, is cited, which holds that trustees and executors, suing for others' benefits, are the parties holding the legal title and the ones whose citizenship determines the jurisdiction of the federal court. But the title to the property of a minor is in the minor. The curator or guardian represents him, but does not have the title; and in the leading case of *Lamar* v. *Micou,* 112 U. S. 452, S. C. 5 Sup. Ct. Rep. 221, the supreme court notices the distinction:

"The case of such a guardian differs from that of an executor of, or a trustee under, a will. In the one case the title is in the executor or the trustee; in the other, the title in the property is in the ward, and the guardian has only the custody and management of it, with power to change its investment."

The bill alleges that the judgments rendered in the state court, upon which this suit is founded, were rendered in favor of the minors. Before this bill was filed the curator was, by this court, appointed as next friend, with power to bring this suit. That ground of the demurrer is not well taken.

I pass to the third question; that is, whether there is any equity in the bill. The facts as stated are these: One Jamison was curator of the estate of these minors. As such he defaulted. A new curator, Mr. Scudder, was appointed in his place. Judgments were rendered in the probate court on July 21, 1885, in favor of these minors, and against Jamison, their former curator. William F. Ferguson was the bondsman of this curator. He died in 1883, and Mr. Ghiselin was appointed as administrator with the will annexed. This was done September 19, 1883. Statutory notice was published, and the estate is now in process of settlement in the probate court. The bill charges that the estate of Ferguson will not pay all the claims allowed against it,—will not pay even all the claims allowed and classed in the fifth class. It charges that there are about $65,000 of claims which have been allowed and classed in the fifth class. The claims of these minors were not exhibited until one year had elapsed, and could not be, because they had not passed into judgment against their former curator; and so, not having been presented until after the expiration of the first year, were allowed and classed in the sixth class. As the estate will not pay all the fifth-class claims they will get nothing.

It further charges that two of the claims, amounting to about $40,000, which were allowed and classed in the fifth class, were not in fact exhibited to the administrator within one year; but by his collusion, and by connivance between him and with the claimants thereof, were reported to the court as exhibited during the first year, and allowed and classed in the fifth class.

Upon these facts counsel asserts—*First*, that, notwithstanding the law of Missouri provides that claims presented within one year shall be allowed and classed in the fifth class, and those presented afterwards shall be allowed and classed in the sixth class, and that the fifth-class claims shall be paid in full before any payment on the sixth-class claims, this court, sitting as a court of equity, is not bound by that law; that equality is equity; that the two claims of forty thousand and odd dollars, which were allowed and classed in the fifth class, being of the same nature, are of only equal equity with the claims in favor of the plaintiffs. In fact, those were claims against the testator as bondsman of the same William F. Ferguson, though as curator of another estate.

I should have stated one further fact as charged in the bill, and that is that although an order has been made to pay 20 per cent. upon the fifth-class claims, the administrator has in his hands enough assets undistributed to pay these claimants (the plaintiffs) *pro rata* with the other holders of fifth-class claims. So, it is insisted that as the administrator has not made distribution of all the assets, as equality is equity, that this court should adjudge against him that he distribute *pro rata* between these parties who have sixth-class claims and those having fifth-class claims of the same nature. Let us see to what that would lead: The administrator is an officer of the probate court, and bound to obey its orders. This court has no power to control the actions of that court, or direct what its judgments shall be. The law of Missouri requires that fifth-class claims be paid before sixth-class claims. The due and orderly administration of affairs in the probate court will necessarily lead to an order upon the administrator that he pay these fifth-class claims. If he does not pay them in full before he pays any on the sixth-class claims, judgment will be rendered against him, to which he and his bondsmen will be liable. Can it be that, discharging his duty in strict obedience to the orders of the court which appointed him, and to the law of the state of which he is an officer, he can be held liable to a judgment in this court. The only way out from such a result would be to hold that this court has power to interfere and take from the probate court the possession of those assets, and itself administer the estate, and that, the supreme court has held, cannot be done. *Yonley* v. *Lavender*, 21 Wall. 276.

Take another illustration: In some of the states attachments have priority as liens according to the dates of the levies. Suppose there are two creditors, one having a matured claim, and the other one not

yet due; the former sues out his attachment, and makes his levy; the other cannot, in time for a contemporaneous levy.    Can it be that a court of equity of the United States will interfere or take from the sheriff the attached property, and distribute it equally between the two creditors upon the doctrine that "equality is equity?"    The whole theory of this claim is that the administrator is liable to a decree in this court because he is obeying the laws of the state of Missouri, and that these non-resident minors have a right to insist upon a disregard of those laws by this court.    There is no such right.    This court does not sit here to overturn the laws of the state of Missouri, but to enforce them.    So far as those laws are valid and constitutional, and there is no question of validity in this case, they are just as binding upon this court as upon the state courts.    Obedience to the laws of the state of Missouri is no basis for liability to an action in this court.    I find in the authorities nothing which justifies this claim.

The various cases cited are these:  The first is that of *Union Bank of Tennessee* v. *Jolly's Adm'rs*, reported in 18 How. 503.    By the laws of the state of Mississippi, when an administrator takes possession of an estate, if he thinks it is insolvent, he may apply to a court, obtain an order, and have notice of insolvency published, and then those creditors that come in and present their claims in this insolvent proceedings share in the assets.    If they do not come in, they do not share.    An administrator taking possession of an estate believed it insolvent, and took the regular proceedings, but when he closed out the estate he had a surplus of six or seven thousand dollars.    This claimant had not presented his claim in those proceedings.    Now, under the law of Mississippi, the surplus went to the heirs; but the supreme court sustained a bill in favor of this claimant as against the administrator to the extent of the fund in his hands.    Well, it is familiar law that a court of equity will follow the assets of an ancestor in the possession of the heir, and apply them to the payment of the debts of the ancestor.    There may be exceptions, but that is the general rule.    Now, instead of waiting for the administrator to turn the property over to the heirs, and leaving the claimant to then proceed against them, the court simply intercepted the fund in the possession of the administrator, and awarded it to the claimant creditor. That is all there is in that case.

In *Payne* v. *Hook*, 7 Wall. 425, which went from this court, the complainant, a distributee, alleged that the administrator was guilty of maladministration, false settlements, an appropriation of funds to his own use, and that by misrepresentation he had wrongfully obtained a receipt or release from her.  By this suit against the administrator she sought to set aside these false settlements, and this wrongful receipt; and she obtained a decree for that which was rightfully her share of the estate.    It was objected that no such proceeding could be had in any state courts until after final settlement in the probate

court, and therefore it was urged that until then no such proceeding could be maintained in this court. But the supreme court held otherwise; that the laws of a state which regulate practice did not prevent the exercise by United States equitable courts of their inherent jurisdiction; and that although a proceeding could not have been instituted in the state court until after final settlement, there was no such restriction upon the powers of the federal court, but that they could proceed whenever a case arose justifying equitable interference. They did not, however, hold that any right could be enforced in the federal courts which could not be enforced in the state courts. If there had been maladministration, and the administrator had misappropriated the assets of the estate, in all courts of equity such a wrong could be righted. That they did not mean anything more than that, is evident, not merely from the facts of the case, and the opinion filed therein, but also from the comments of the same court in the subsequent case of *Yonley* v. *Lavender*, 21 Wall. 276. Referring to this case of *Payne* v. *Hook* the court says:

"It was contended as the complainant, were she a citizen of Missouri, could only obtain relief through the local court of probate, that she had no better right because of her citizenship in Virginia; but this court held that the equity jurisdiction conferred on the federal courts is the same that the high court of chancery in England possesses; is subject neither to limitation nor restraint by state legislation; and that a bill stating a case for equitable relief according to the received principles of equity would be sustained, although the state court having general chancery jurisdiction would not entertain it. The bill charged gross misconduct on the part of the administrator, and one of its main objects was to obtain relief against these fraudulent proceedings. This relief was granted, and the administrator was compelled to faithfully carry out the trust reposed in him, and to pay to the complainant the distributive share of the estate of her brother, according to the laws of Missouri."

But this case of *Yonley* v. *Lavender* throws further light upon this question, and decides that an estate in the hands of an administrator is in the custody of the court appointing him, and cannot be taken out of such custody by the federal courts. It appeared that a creditor of a decedent in Arkansas, whose estate had been placed in the hands of an administrator by the probate court, commenced an action in the federal court, obtained judgment against the administrator, and issued execution, levied on the property, and sold it, and the purchaser brought ejectment. The supreme court of Arkansas held that the purchaser took no title, and the supreme court of the United States affirmed that judgment, and this quotation, notwithstanding its length, as it is pertinent to the present inquiry, I beg leave to read:

"The question is whether the United States courts can execute judgment against the estate of deceased persons, in the course of administration, in the states, contrary to the declared law of the state on the subject. If they can, the rights of those interested in the estate, who are citizens of the state where the administration is conducted, are materially changed, and the limitation which governs them does not apply to the fortunate creditor who happens to

be a citizen of another state. This cannot be so. The administration laws of Arkansas are not merely rules of practice for the courts, but laws limiting the rights of parties, and will be observed by the federal courts in the enforcement of individual rights. These laws, on the death of Du Bose and the appointment of his administrator, withdrew the estate from the operation of the execution laws of the state, and placed it in the hands of a trustee for the benefit of creditors and distributees. It was thereafter, in contemplation of law, in the custody of the probate court, of which the administrator was an officer, and during the progress of administration was not subject to seizure and sale by any one. The recovery of judgment gave no prior lien on the property, but simply fixed the *status* of the party, and compelled the administrator to recognize it in the payment of debts. It would be out of his power to perform the duties with which he was charged by law if the property intrusted to him by a court of competent jurisdiction could be taken from him, and appropriated to the payment of a single creditor to the injury of all others. How can he account for the assets of the estate to the court from which he derived his authority if another court can interfere and take them out of his hands? The lands in controversy were assets in the administrator's hands to pay all the debts of the estate, and the law prescribed the manner of their sale, and distribution of the proceeds. He held them for no other purpose, and it would be strange, indeed, if state power was not competent to regulate the mode in which the assets of a deceased person should be sold and distributed."

I think that case is conclusive upon this question. The law of Missouri, which provides that claims allowed and classified in the fifth class shall be paid before claims allowed and classified in the sixth class, is the law providing for a settlement of a deceased person's estate, and is binding upon the federal as upon the state courts.

Another ground upon which this bill is sought to be maintained is exactly the opposite. This which I have been considering is that the defendant was liable if he obeyed the law of the state; the other is that he is liable because he has disobeyed such law. In respect to that, it is said that the claims of these two creditors were not presented within a year, were not exhibited in the language of the statute; but that by collusion and connivance of the defendant with those claimants they were reported to the probate court as thus exhibited, and hence allowed as in the fifth class, and in view of the other circumstances that operate to the prejudice of these minors, whose claims are allowed in the sixth class. The theory is that the defendant is liable because he has disobeyed the laws of the state of Missouri; and if that be true, it seems to me that he is liable to these plaintiffs, whatever rights those other claimants may have to the payment of their entire claims. By his wrongful act he has prevented these plaintiffs from sharing in any part of the estate; for if these other claims had been classed in the sixth class, as they ought to have been, there would have been a *pro rata* division between them and these claimants. His wrongful act prevents that. For such wrongful act, I take it, he is liable in any court having jurisdiction. That I understand to be the proposition underlying the case of *Payne* v. *Hook*,—that an administrator guilty of wrong in his

administration, thereby renders himself responsible for that wrong to any person aggrieved thereby. If this administrator, by collusion and connivance, has lifted up claims which otherwise belonged in the sixth into the fifth class, and so has practically cut out these plaintiffs from any payment from the estate, to that extent he is personally responsible, and, I take it, it matters not in what court relief is sought. It may be in the state or in the federal courts; and, as in the case of *Payne* v. *Hook*, the parties are not obliged to wait until the final settlement of the estate, although they could obtain remedy in the probate court by a restatement of the account on final settlement. So, on that ground, and on that ground alone, the demurrer to the bill will be overruled, and the defendant can answer by May rules.