**Charles W. CROSSON, Jr., Appellee,**

v.

**Wendell F. CONLEE, the Executor of the Estate of E. Douglas Via, Deceased, Appellant.**

**No. 83–2035.**

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1984.

Decided Oct. 4, 1984.

Rehearing and Rehearing In Banc Denied Nov. 8, 1984.

William B. Hopkins, Jr., Roanoke, Va. (P. Brent Brown, Martin, Hopkins, Lemon & Carter, P.C., Roanoke, Va., on brief) for appellant.

Robert F. Rider, Roanoke, Va., for appellee.

Before RUSSELL and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

This action is brought by Charles W. Crosson, Jr., plaintiff/appellee, against Wendell F. Conlee, the executor of the estate of E. Douglas Via, defendant/appellant, alleging breach of a contract of employment entered into by Crosson and Via. Subject matter jurisdiction rests on diversity of citizenship, 28 U.S.C. § 1332(a)(1), plaintiff Crosson being a resident of Virginia, while defendant Conlee is a Florida attorney appointed under Florida law as personal representative for E. Douglas Via, a resident of Florida at the time of his death. The principal issues before us are, first, whether the federal district court in Virginia had personal jurisdiction over defendant where no property of the estate of the decedent was located in Virginia, and second, whether plaintiff's claim against the executor is barred due to noncompliance with Florida's nonclaim statute, not having been presented to the Florida probate court within three months of the first publication of notice of administration. The case was tried before a jury, which rendered a verdict for plaintiff in the amount of $20,296.46. Defendant moved for judgment n.o.v., which the district court denied, entering judgment on the verdict. Defendant appeals, and we reverse.

I

The pertinent facts are not subject to dispute. Plaintiff's complaint alleged that he was employed in September 1978 as a manufacturer's representative for Via's business, a sole proprietorship located in Roanoke, Virginia, A condition of plaintiff's acceptance of employment was that Via would retire from the business at the close of 1980, and plaintiff would then assume control. During 1979 and 1980 the business was effectively carried on by plaintiff, Via having moved from Virginia to Florida, making only occasional visits to Roanoke. Via refused to honor his agreement to retire at the end of 1980, and also withheld commissions due to plaintiff in 1981 under the terms of his contract of employment.

Plaintiff has asserted without contest that the contract was entered into in Virginia.

Via died on May 5, 1982 in the State of Florida, where he was then a resident and domiciled. All of Via's property, real and personal, was located in Florida at the time of his death and remains there. Defendant qualified as the personal representative of Via's estate in the Probate Division of the Circuit Court for Sarasota County, Florida on May 28, 1982. Notice of administration of the estate was first published on May 31. Plaintiff filed his complaint in the United States District Court for the Western District of Virginia against defendant in his capacity as executor on July 2, 1982, but failed to file any claims with the Probate Court in Florida within three months of the publication of notice of administration.

Defendant generally pled the "applicable statute of limitations" as a bar in his answer of July 29, 1982, but did not specifically raise the issue of the nonclaim statute until he moved for summary judgment in December 1982, after the three-month period had elapsed.

## II

Personal jurisdiction over defendant is asserted on the basis of the Virginia long-arm statute, Va.Code, §§ 8.01–328 to 330, and Fed.R.Civ.P. 4(d)(7) and 4(e), which authorize extraterritorial service of process in accordance with the laws of the state in which the district court is held. Va.Code § 8.01–328.1(A)(1) confers personal jurisdiction on the Virginia courts as to a cause of action arising from a "person's ... [t]ransacting any business in this Commonwealth." The statute expressly defines "person" to include "an individual, his executor, administrator, or other personal representative," Va.Code § 8.01–328, thereby bringing defendant within its ambit.

This jurisdictional question is complicated, however, by the old Virginia common law rule that an executor or administrator is not subject to suit in a state other than that of his appointment, unless he brings into or collects from the state assets of the decedent's estate. *Sylvania Industrial Corp. v. Lilienfeld's Estate*, 132 F.2d 887, 890 (4th Cir.1943); *Fugate v. Moore*, 86 Va. 1045, 11 S.E. 1063 (1890). In *Sylvania*, we recognized that Virginia law is controlling on whether a foreign executor is subject to suit in a federal court in Virginia, 132 F.2d at 890, and applied the rule of *Fugate* in holding that the defendant, a foreign executrix, could be sued in federal court there because Virginia was the situs of corporate stock belonging to the estate. *Id.* at 891. Here, however, no assets of the estate of Via are found in Virginia, so that the exception to the prohibition against suing a foreign executor in *Fugate* and *Sylvania* cannot be met. The issue, then, is whether the common law prohibition against such a suit as this has been removed by the enactment of the Virginia long-arm statute in 1964.

*Sylvania* explained the Virginia rule thus:

"The reason that a foreign executor is not ordinarily subject to suit is that a grant of administration has no legal operation outside the state from whose jurisdiction it is derived. [citation omitted] The exception recognized by the Virginia decisions is based upon the right of the state to protect local creditors with respect to the property of the decedent found or brought within the state. As to such property, the power of the state can be asserted without regard to the powers granted the executor by the foreign state."

132 F.2d at 891. Likewise, the comments to Restatement (Second) of Conflict of Laws § 358 (1971) indicate that the judicial reluctance to entertain suits against foreign executors is not necessarily due to a want of jurisdiction, but because "the courts have deemed themselves incompetent to entertain the suit in the absence of statute," since a foreign executor holds the assets of the estate subject to the direction of the appointing court. Comment b. The rule permitting suit against a foreign executor where assets lie within the forum state is predicated on the state's *in rem*

jurisdiction over property within its own territory. Comment c.

*Sylvania* was decided two years before the revolution in personal jurisdiction wrought by the Supreme Court's enunciation of the "minimum contacts" due process doctrine in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A suit such as that before us falls within the permissible limits of due process, being "based on a contract which had substantial connections with" the forum state, Virginia. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). We conclude that the facts of this case also come within the "transacting business" clause of the Virginia long-arm statute. There can be no doubt that personal jurisdiction could have been obtained over Via during his lifetime, as he had operated a business in Virginia and entered into a contract with plaintiff concerning that business in Virginia. As the Virginia Supreme Court and this Circuit have repeatedly held, the long-arm statute represents a deliberate and conscious effort by the Virginia legislature to assert jurisdiction over nonresident defendants to the extent permitted by due process. *Brown v. American Broadcasting Co., Inc.,* 704 F.2d 1296, 1301 (4th Cir.1983); *Peanut Corp. of America v. Hollywood Brands, Inc.,* 696 F.2d 311, 313 (4th Cir.1982); *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664, 667 (1971); *Carmichael v. Snyder,* 209 Va. 451, 164 S.E.2d 703, 707 (1968). The Virginia Supreme Court has not yet addressed the issue before us, but we are convinced that it would recognize, as we do now, that the enactment of the Virginia long-arm statute in 1964, over two decades after *Sylvania,* considerably broadened the scope of per-

sonal jurisdiction in Virginia and superseded the rule of *Fugate* and *Sylvania.* [1] That common law doctrine, with its focus on the location of property, was more suited to the narrow concept of personal jurisdiction embodied in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). By defining persons subject to the statute to include an executor, the legislature necessarily rejected the possibility that personal jurisdiction might disappear with the fortuitous death of an individual defendant.[2] A finding of personal jurisdiction here is in accord with the rule expressed in Restatement (Second) of Conflict of Laws § 358 (hereinafter Restatement):

> "An action may be maintained against a foreign executor or administrator upon a claim against the decedent when the local law of the forum authorizes suit in the state against the executor or administrator and
>
> > "(a) suit could have been maintained within the state against the decedent during his lifetime because of the existence of a basis of jurisdiction other than mere physical presence."

The Massachusetts Supreme Judicial Court has addressed an analogous situation in *Saporita v. Litner,* 371 Mass. 607, 358 N.E.2d 809 (1976). In *Saporita,* the plaintiff sought to recover against the defendant executor on a contract for services performed for the testator in Massachusetts. The testator, however, had left no assets in Massachusetts, and the executor had been appointed by a Connecticut probate court. The executor relied on the general rule that in Massachusetts a foreign executor was not subject to suit in the state courts. Effectively rejecting the common law rule in favor of a due process analysis, the Supreme Judicial Court held that because the testator had sufficient

---

**1.** Even after *International Shoe,* the common law rule as expressed in *Sylvania* remained in force in jurisdictions that had not yet expanded personal jurisdiction by statute. *See, e.g. Callwood v. Virgin Islands National Bank,* 221 F.2d 770, 778 (3d Cir.1955) (Virgin Islands).

**2.** Virginia law continues to make provision for appointment of a local administrator solely for

purpose of prosecution of a personal injury or wrongful death action against the estate of a nonresident decedent, where the cause of action arose in Virginia. Va.Code § 64.1–75.1. Presumably this recognizes that in many tort actions the decedent will have no connection with Virginia other than mere physical presence at the time of his death.

"minimum contacts" with Massachusetts to permit the exercise of personal jurisdiction under *International Shoe*, there existed "no sound reason why the general rule granting immunity to foreign executors should shield the defendant from suit in Massachusetts, where the parties lived and worked, where they made the contract, where they intended the contract to be performed, and where the plaintiff had carried out her part of the contract," 358 N.E.2d at 816, absent any showing that the exercise of jurisdiction would unduly interfere with proceedings in the Connecticut probate court.[3] *See also Eubank Heights Apartments, Inc. v. Lebow*, 615 F.2d 571 (1st Cir.1980), finding under the authority of *Saporita* that a Texas state court could obtain jurisdiction under the Texas long-arm statute over a Massachusetts executrix, despite the absence of any assets in Texas.

Accordingly, we hold that personal jurisdiction was properly obtained over defendant, a Florida executor, under the Virginia long-arm statute, notwithstanding the absence of any assets of the decedent's estate in Virginia. We next consider the effect of the Florida nonclaim statute.[4]

### III.

Fla.Stat.Ann. § 733.702 provides in relevant part:

"(1) No claim or demand against the decedent's estate, that arose before the death of the decedent ... shall be binding on the estate, on the personal representative, or any beneficiary, unless presented:

"(a) Within three months from the time of the first publication of the notice of administration, even though the personal representative has recognized the claim or demand by paying a part of it, or interest on it, or otherwise ...."

A claim is presented by filing a written statement with the clerk of the Probate Court in the county in which the executor qualified. Fla.Stat.Ann. § 733.703. Filing of a suit against the executor does not satisfy the presentment requirement of the nonclaim statute. *See A.R. Douglass Inc. v. McRainey*, 102 Fla. 1141, 137 So. 157, 159 (1931).[5]

The Florida courts have consistently held that the nonclaim statute is applicable against nonresident claimants as well as residents. *McCord v. Smith*, 43 So.2d 704, 707 (Fla.1949); *Brooks v. Federal Land Bank of Columbia*, 106 Fla. 412, 143 So. 749, 752 (1932). The "cardinal purpose of the statute ... is to facilitate an orderly and expeditious settlement of estates," *McCord*, 43 So.2d at 708, a purpose which could hardly be served if claims in other states were allowed to go unadjudicated for years, postponing conclusion of the administration of the estate indefinitely. *See Brooks*, 143 So. at 753. Although the nonclaim statute bears some similarity

---

**3.** The Massachusetts long-arm statute, like Virginia's, is generally applicable to executors, administrators or other personal representatives. Mass.Gen.Laws Ann., ch. 223A, § 1. *See Saporita*, 358 N.E.2d at 814–15 n. 5.

**4.** In *Saporita*, the executor also attempted to defend on the basis of the Connecticut nonclaim statute, Conn.Gen.Stat. § 45–205, but the court ruled that the issue was not properly before it, because the statute had not been pleaded below. 358 N.E.2d at 816.

**5.** Following *McRainey*, the Florida legislature amended the nonclaim statute in 1945 to permit the filing of a lawsuit against a decedent's personal representative to act as a substitute for filing a claim in the appropriate probate court. Fla.Stat.Ann. § 733.16(1)(a). *See Wimpfheimer v. Goldsmith*, 298 A.2d 778, 781 (Del.Ch.1972);

*McCord v. Smith*, 43 So.2d 704, 707 (Fla.1949). In 1976, the Florida legislature amended and recodified the nonclaim statute as the present Fla.Stat.Ann. § 733.702, omitting this exception to the presentment requirement. Under established principles of statutory interpretation, it is presumed that the legislature was familiar with the existing law and judicial construction of former law when it amended the nonclaim statute, *see Williams v. Jones*, 326 So.2d 425, 435 (Fla.1975), *appeal dismissed*, 429 U.S. 803, 97 S.Ct. 34, 50 L.Ed.2d 63 (1976), and that where the legislature amended a statute by omitting words, it intended the statute to have a different meaning from that previously accorded. *See Capella v. City of Gainesville*, 377 So.2d 658, 660 (Fla.1979).

to a statute of limitations, in that it prevents the "enforcement of stale demands," *McCord*, 43 So.2d at 708, it is "not wholly such," *Brooks*, 143 So. at 753. Florida's statute has been described by one court as substantive rather than procedural, *Wimpfheimer v. Goldsmith*, 298 A.2d 778, 780 (Del.Ch.1972), and there is authority for the view that nonclaim statutes are jurisdictional, so that unless complied with, a claim against the estate cannot be allowed. 31 Am.Jur.2d *Executors and Administrators* § 291 (1967). *See also* 34 C.J.S. *Executors and Administrators* § 422 (1942).

Plaintiff asserts that the nonclaim statute cannot bar his claim from being heard in a federal district court in Virginia, and that the longer Virginia statute of limitations allowing five years for suit on a written contract and three years on an oral contract, Va.Code § 8.01–246,[6] is applicable rather than the nonclaim statute. Virginia allows suit to be brought against a personal representative for any contract with his decedent, Va.Code § 64.1–144, and although Virginia has a procedure for presentation of creditors' claims against an estate being administered in Virginia, Va. Code § 64.1–171, Virginia apparently has no nonclaim statute comparable to Florida's.

██ As our subject matter jurisdiction in this case rests on diversity of citizenship, we are required to give effect to an applicable state statute limiting the period within which recovery may be had, *Guaranty Trust Co. v. York*, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), and we must follow the conflict of laws rules of the forum state, Virginia. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The issue before us presents a conflict between not merely two limitations periods, but between the functions of two bodies of law,

that of contracts and that of estate administration.

██ There is no question that, had this suit been brought while Via was alive, the law of Virginia would have governed. Virginia has long adhered to the traditional conflicts principle that the "nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties." *Woodson v. Celina Mutual Insurance Co.*, 211 Va. 423, 177 S.E.2d 610, 613 (1970), *quoting C.I.T. Corp. v. Guy*, 170 Va. 16, 195 S.E. 659, 661 (1938). *Accord, Poole v. Perkins*, 126 Va. 331, 101 S.E. 240, 241 (1919). As this suit can be seeking no more than to establish the rights of plaintiff under the contract, the federal courts having no probate jurisdiction, *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946), *Byers v. McAuley*, 149 U.S. 608, 619, 13 S.Ct. 906, 910, 37 L.Ed. 867 (1893), Virginia law would still apply, including the relevant statute of limitations for suit on a contract, even though the suit is now against the executor. As we have discussed above, it is generally accepted that an action may be brought against a foreign executor if authorized by state law and jurisdiction would have existed to bring suit against the decedent in his lifetime. Restatement § 358 and comment d.

Our finding that the Virginia statute of limitations governs this action, however, does not end our inquiry. We have held that the traditional rule permitting suit against foreign executors only where assets are found in the forum state has been superseded with respect to personal jurisdiction; it remains true, nonetheless, that a judgment against a foreign executor is only effective of its own force "so far as it creates a claim against things belonging to the decedent which are situated in the state," Restatement § 358 comment c, and no assets are found in Virginia against

---

**6.** Although it is not entirely clear from the record whether the contract between plaintiff and Via was oral or written, the district court found that certain documents exchanged by the parties to the contract overcame a statute of frauds challenge, and that ruling is not appealed.

which the judgment might be enforced. The federal courts in Virginia have no jurisdiction over the *res* of Via's estate, located entirely in Florida, and defendant executor is subject to suit only in his representative capacity; thus, the district court's judgment for plaintiff cannot enable recovery in itself. Though a judgment entered in Virginia would not be subject to challenge on the merits in Florida, under the full faith and credit requirement of the federal Constitution, Art. IV, § 1, *see Markham*, 326 U.S. at 494, 66 S.Ct. at 298, *McCord*, 43 So.2d at 708, the claim would nevertheless have to be enforced in separate Florida administration proceedings, in common with all claims of general creditors, as stated in Restatement § 358 comment d. Since the Florida courts are required to enforce their state's nonclaim statute against nonresidents, under controlling decisions of the state Supreme Court, satisfaction of plaintiff's claim is impossible regardless of its merits, leaving the district court's judgment a practical nullity. It is settled law that enforceability and the effect to be given a judgment against a nonresident executor must be determined by the courts of the state where probate proceedings are pending. *Brooks v. National Bank of Topeka*, 251 F.2d 37, 42 (8th Cir.1958). *See Security Trust Co. v. Black River National Bank*, 187 U.S. 211, 227, 23 S.Ct. 52, 57, 47 L.Ed. 147 (1902); *Byers*, 149 U.S. at 620, 13 S.Ct. at 910; *Yonley v. Lavender*, 88 U.S. (21 Wall.) 276, 279, 22 L.Ed. 536 (1894). A federal court has power to entertain suits by creditors of an estate to establish their claims, but only to the extent that this does not "interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham*, 326 U.S. at 494, 66 S.Ct. at 298.

 We think that the unusual circumstances of this case merit application of the principle that a court "will not exercise judicial jurisdiction if it cannot provide appropriate relief." Restatement § 85. Although courts have often allowed suits to be brought against executors notwithstanding the bar of a nonclaim statute in another state, such cases have typically involved claims which might be satisfied through insurance, *see, e.g. Propst v. Fisher*, 313 F.2d 248 (6th Cir.1963); *Brooks*, 251 F. at 37, or through assets located in the forum state, *Owens v. Estate of Saville*, 409 S.W.2d 660 (Mo.1966), so that the probate jurisdiction of the other state would not necessarily be disturbed. *Cf. Swan v. Estate of Monette*, 400 F.2d 274, 277 (Lay, J., concurring) (8th Cir.1968) (denying claim barred by nonclaim statute of forum state). We are not granting the Florida statute any extraterritorial application in Virginia, but only recognizing the effect that statute will have on enforcement of this claim. It would be futile to allow plaintiffs to take claims such as this against a nonresident executor to trial on the merits and judgment, where satisfaction of the judgment could only be had from an estate which cannot be reached due to the bar of a nonclaim statute in the state with probate jurisdiction. In such circumstances, the district court's judgment becomes no more than an advisory opinion, possibly affording some moral vindication to the plaintiff but nothing else, and threatening to needlessly deter a prudent executor from final disposition of the estate. Subject matter and personal jurisdiction are not wanting, but the federal courts in Virginia are nonetheless powerless to aid plaintiff, given the situs of the entire estate in Florida and the Florida law as conclusively determined by the state's highest court. We hold that once defendant specifically raised the bar of the Florida nonclaim statute,[7] and established that all the assets of the estate were within the exclusive probate jurisdiction of

---

7. We perceive no basis for plaintiff's contention that defendant waived the nonclaim statute by failing to plead it specifically in his answer as a defense. At the time defendant filed his answer, the three-month period of the nonclaim statute had not yet run, and the statute thus afforded no defense; therefore, it could hardly have been pleaded.

the Florida courts, the district court should have declined jurisdiction.[8]

## IV.

 We do not agree with the district court that defendant would be estopped from raising the defense of the nonclaim statute in the Florida courts. Defendant, it is true, did not specifically raise the defense until after the three-month filing period had passed, but that is the only resemblance this case bears to *Davis v. Evans,* 132 So.2d 476 (Fla.Dist.Ct.App.1961), on which plaintiff relies. In *Davis,* a negligence action was brought against the decedent a month before his death. The Florida nonclaim statute then in effect gave creditors eight months from the date of the publication of notice of administration to present their claims, and the requirement was not satisfied by the pendency of a suit against the decedent at the time of his death. The same attorneys represented the decedent and his executor, and they allowed transactions to be carried on between *the parties during* the eight-month period in the decedent's name, never informing the plaintiff that their client had died. Only after the eight-month period had run did the attorneys give notice of the death, and raise the nonclaim statute as a bar. The court held that, assuming the plaintiff had no knowledge of the death and that the executor had knowledge of the pending suit as the plaintiff averred, the executor would be estopped from raising the nonclaim statute as a matter of law. 132 So.2d at 482.

The crucial distinction between this case and *Davis* is that here, plaintiff knew that Via had died when he filed his suit, as he named the executor as defendant in his complaint.

Accordingly, we reverse the judgment of the district court and remand for entry of judgment for defendant.[9]

REVERSED AND REMANDED WITH DIRECTIONS.

---

8. Given our disposition of this issue, we do not reach the question stressed by the district court of whether the Florida nonclaim statute is to be treated as going only to the remedy or to the right to recover, under *Norman v. Baldwin,* 152 Va. 800, 148 S.E. 831 (1929). This matter would only arise if Florida, rather than Virginia, were the state of the "otherwise applicable" substantive law, Restatement § 143, which we have found not to be the case.

9. As our decision is predicated on the factual assumption that the entire estate is, as alleged by defendant, within Florida, plaintiff is not prejudiced against having his judgment reinstated should any assets actually be discovered outside the jurisdiction of the Florida courts from which the judgment might be satisfied.