# SECURITY TRUST COMPANY *v.* BLACK RIVER NATIONAL BANK.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 39.  Argued April 21, 22, 1902.—Decided December 1, 1902.

Under the statutes of the State of Minnesota and the decisions of the courts of that State construing and applying them, a creditor cannot maintain a suit in the courts of that State for a debt against a decedent after the expiration of the period limited by the order of the probate court in which creditors may present claims against the deceased for examination and allowance, and after an allowance of the administrator's final account and a final decree of distribution.

Although it is a well settled principle that a foreign creditor may establish his debt in the courts of the United States against the personal representative of a decedent, notwithstanding the fact that the laws of the State limit the right to establish such demands to a proceeding in the probate courts of the State, it is also equally well settled that the courts of the United States in enforcing such claims are administering the laws of the State of the domicile and are bound by the same rules that govern the local tribunals; and if a foreign creditor of a Minnesota decedent delays proceedings in the Federal court until after the time to present claims fixed by the order of the probate court has expired and the final distribution of the estate has been effected, he cannot use the Federal courts to devolve a new responsibility upon the administrator and interfere with the rights of other parties, creditors or distributees, which have become vested under the regular and orderly administration of the estate under the laws of the State.

Although under the state statutes the probate court may, before final settlement and upon good cause shown, extend the time for presentation of claims, this court is not called upon to determine in a case where no application for such extension was made before final settlement whether a Federal court might or might not, on good cause shown, extend such time.  It is obvious and always has been held that the United States Circuit Court cannot in the trial of an action at law exercise the powers of a court of equity.

In January, 1897, the Black River National Bank of Lowville brought an action in the Circuit Court of the United States for the District of Minnesota against the Security Trust Com-

pany of St. Paul, as administrator of the estate of Sumner W. Matteson, deceased. The complaint alleged that the plaintiff was a corporation duly organized under the national banking laws of the United States, having its place of business at Lowville, Lewis County, and State of New York; that the defendant was a corporation created by the laws of the State of Minnesota, having its place of business at the city of St. Paul and State of Minnesota, and had been duly appointed administrator of the estate of Sumner W. Matteson, deceased, by the proper probate court of Ramsey County, Minnesota, on or about the 3d day of September, 1895; that the said Matteson had been during his lifetime a resident and citizen of the State of Minnesota.

For a cause of action the complaint averred that on the 27th day of February, 1894, the said Matteson had executed his two promissory notes, wherein for value received he promised to pay to the order of James H. Easton and Company, at the First National Bank of Decorah, Iowa, the sum of twenty-five hundred dollars, four months after date, with interest thereon at the rate of eight per cent per annum from date until paid; that thereafter, on March 22, 1894, and before the maturity of said notes, the said James H. Easton and Company, for value received, sold and assigned the same to the plaintiff; that said James H. Easton and Company was a copartnership doing business at Decorah, and that all the members thereof were residents and citizens of the State of Iowa; that no part of said notes has ever been paid except the interest thereon to the 24th day of November, 1894.

The complaint further alleged that the defendant, as administrator of the estate of Sumner W. Matteson, had in its hand and under its control property, money and effects which belonged in his lifetime to said Matteson, more than sufficient to pay the amount due the plaintiff; that the estate of said Matteson was in process of settlement in the probate court of Ramsey County, State of Minnesota, and had not been fully and finally settled and probated, and that said administrator had never been discharged and was still the administrator of the estate of said Matteson, deceased; and plaintiff demanded judg-

ment against the defendant in the sum of five thousand dollars and interest thereon from the 24th day of November, 1894.

On February 12, 1897, the defendant appeared and answered, admitting those allegations of the complaint which alleged the making and transfer of said notes, and that the same remained unpaid in the hands of the plaintiff, but denying that the defendant had in its hands as administrator of said Matteson any money or property applicable to the payment of said notes. The answer also alleged that the estate of said Matteson had been fully settled, probated and administered upon and discharged from the probate court long prior to the commencement of plaintiff's action, and that the defendant had long before the commencement of this action turned over all property, money and effects of said estate remaining in its hands, to the persons entitled thereto, and that defendant long before the commencement of this action had been discharged as such administrator, and was not when said action was brought and is not now administrator of the estate of said decedent.

On March 20, 1897, the plaintiff filed a reply, traversing the allegations of the answer. Thereafter and on the 18th day of January, 1899, a stipulation of facts and waiver of jury trial were filed. In the stipulation of facts it appeared that the estate of Matteson had been settled, administered upon and discharged from the probate court prior to the commencement of plaintiff's action in the Circuit Court of the United States.

On April 17, 1899, the cause came on to be heard, on the pleadings and stipulation of facts, and judgment was entered in favor of the plaintiff in the sum of $6782.89, to be paid and enforced out of the property and effects of the intestate, Sumner W. Matteson, deceased; and it was ordered further that this judgment be duly certified by this court to the probate court of Ramsey County as a claim duly approved, established and allowed against the estate of Sumner W. Matteson, deceased.

Subsequently the cause was taken to the United States Circuit Court of Appeals for the Eighth Circuit, where on October 17, 1900, the judgment of the Circuit Court was affirmed, on authority of the case of the *Security Trust Company, as Administrator of Sumner W. Matteson, deceased,* v. *William H.*

*Dent, as Receiver of the First National Bank of Decorah,* reported in 104 Fed. Rep. 380.

Whereupon a writ of certiorari was prayed for and allowed, and the cause was brought to this court.

*Mr. Edmund S. Durment* for petitioner. *Mr. Albert R. Moore* was with him on the brief.

*Mr. Edward C. Stringer* for respondent. *Mr. McNeil V. Seymour* was with him on the brief.

Mr. Justice Shiras, after making the foregoing statement, delivered the opinion of the court.

This was a suit brought in January, 1897, in the Circuit Court of the United States for the District of Minnesota, by the Black River National Bank of Lowville, incorporated under the national banking laws of the United States, and doing business in the county of Lewis and State of New York, against the Security Trust Company of St. Paul, Minnesota, as administrator of the estate of Sumner W. Matteson, deceased, seeking to recover the sum of five thousand dollars and interest thereon, due on certain promissory notes made by said Matteson in his lifetime, and which were alleged to be the property of the said national bank.

No defence was interposed as respected the execution of the notes or the ownership of the same by the bank. It was admitted that the Security Trust Company had been, on September 3, 1895, duly appointed by the probate court of Ramsey County, Minnesota, administrator of the estate of said Matteson. The defendant, however, alleged, in its answer that, as the action was not brought until after the time limited by the order of the probate court for the filing, examination and allowance of claims against Matteson's estate, nor until after the examination and allowance of the administrator's final account, under the laws of the State of Minnesota, the official existence of the defendant company as administrator had ceased, and therefore no action could be maintained against it, and also

that the right to a judgment on the notes in suit was, by the laws of Minnesota, forever barred, although they were owned by a non-resident of the State, and a recovery was sought in a Federal court.

Two inquiries are presented to us—first, whether, by virtue of the state statutes, the estate of Matteson had been so fully settled and administered, before the present action was brought, as to operate as a discharge of the administration, and as a bar to a right of the plaintiff to recover against the estate in the state courts; and, second, if the first question must be affimatively answered, whether, not withstanding such a condition of the statutory law of the State, an action can be successfully maintained by a citizen of another State in the Circuit Court of the United States on a cause of action not barred by the general statute of limitations of the State.

It is scarcely necessary to say that, as respects the first of these inquiries, we must find an answer in the provisions of the constitution and statutes of Minnesota as interpreted and construed by the Supreme Court of that State.

The state constitution and statutory provisions bearing upon the question involved are the following:

"Constitution, art. VI, sec. 7. There shall be established in each organized county in the State a probate court, which shall be a court of record, and be held at such times and places as may be prescribed by law. . . . A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction, except as prescribed by this constitution."

General Statutes, 1894:

"SEC. 4523. The probate court at the time of granting letters testamentary or of administration shall make an order allowing to the executor or administrator a reasonable time, not exceeding one year and six months, for the settlement of the estate.

"SEC. 4524. The probate court may, upon good cause shown by the executor or admininistrator, extend the time for the settlement of the estate not exceeding one year at a time, unless in the judgment of the court a longer time be necessary."

"SEC. 4527. When there is not sufficient personal estate in

the hands of the executor or administrator to pay all the debts and legacies and the allowance to the widow and minor children, the probate court may, on petition of the executor or adminis- trator, order the sale of the real estate or so much thereof as may be necessary to pay the same."

Section 4471 provides that real estate shall descend subject to the debts of the intestate.

" SEC. 4638. Every executor or administrator shall render his account of his administration within the time allowed him for the settlement of the estate and at such other time as he is re- quired by the court, until the estate is wholly settled.

" SEC. 4639. When the estate is fully administered, the exec- utor or administrator shall petition the probate court for an or- der fixing a time and place in which it will examine, settle and allow the final account of the executor or administrator, and for the assignment of the residue of the estate to the persons entitled thereto by law.   The final account shall be filed in the probate court at the time of filing said petition.

" SEC. 4640. Upon the filing of said petition the court shall make an order fixing a time and place for hearing the same. Said order shall be published according to law.

" SEC. 4641. On hearing such petition, the probate court shall examine every executor and administrator upon oath as to the truth and correctness of his account before the same is allowed; but such examination may be omitted when no objection is made to the allowance of the account and there is no reason to doubt the justness and correctness thereof; and the heirs, lega- tees and devisees may be examined on oath upon any matter relating to the account of any executor or administrator when- ever the correctness thereof is called in question.   If from such examination the account is found just and correct the probate court shall allow and settle the same, and upon satisfactory evi- dence shall determine the rights of the persons to the residue of said estate and unless partition is asked for and directed as hereinafter provided, make a decree accordingly, assigning said residue to the persons thereto entitled by law.

" SEC. 4642. In such decree the court shall name the persons and the proportion or parts to which each is entitled, and if

real estate, give a description as near as may be of the land to which each is entitled; and such persons may demand and recover their respective shares from the executor or administrator, or any other person having the same; and a certified copy of any decree of distribution of real estate may be recorded in the office of the register of deeds in every county in this State in which are situated any of the lands described in such decree; and such register of deeds shall enter in his reception book the name of the deceased as grantor, and the names of the heirs, legatees or devisees, as grantees, and shall make in such reception book so many separate grantor and grantee entries for such decree as there are persons taking real estate in such county under said decree."

"Sec. 4509. At the time of granting letters testamentary or of administration, the court shall make an order limiting the time in which creditors may present claims against the deceased for examination and allowance, which shall not be less than six months nor more than one year from the date of such order; said order shall fix the time or times and place in which the court will examine and adjust claims and demands of all persons against deceased. No claim or demand shall be received after expiration of the time so limited, unless for good cause shown the court may in its discretion receive, hear and allow such claim upon notice to the executor or administrator, but no claim shall be received or allowed unless presented within one year and six months from the time when notice of the order is given, as provided in the next section, and before final settlement, and the allowance or disallowance of any claim shall have the same force and effect as a judgment for or against the estate; . . .

"Sec. 4510. The order prescribed in section one hundred and two shall be published according to law, and shall be notice to all creditors and persons interested.

"Sec. 4511. All claims arising upon contracts, whether the same be due, not due, or contingent, must be presented to the probate court within the time limited in said order, and any claim not so presented is barred forever; such claim or demand may be pleaded as an offset or counterclaim to an action brought

by the executor or administrator. All claims shall be itemized, and verified by the claimant, his agent or attorney, stating the amount due, that the same is just and true, that no payments have been made thereon which are not credited, and that there are no offsets to the same to the knowledge of affiant. If the claim be not due, or be contingent, when presented, the particulars of such claim must be stated. The probate court may require satisfactory vouchers or proofs to be produced in support of any claim."

" SEC. 4514. No action at law for the recovery of money only shall be brought in any of the courts of this State against any executor, administrator or guardian upon any claim or demand which may be presented to the probate court except as provided in this code. No claim against a decedent shall be a charge against or lien upon his estate unless presented to the probate court as herein provided within five years after the death of such decedent : *Provided,* That this provision shall not be construed as affecting any lien existing at the date of such death : *Provided, further,* That said provision shall not be construed as affecting the right of a creditor to recover from the next of kin, legatee or devisee to the extent of assets received. This provision shall be applicable to the estate of persons who died prior as well as to those who may die after adoption of this code."

" SEC. 4517. Upon the allowance or disallowance of any claim the court shall make its order allowing or disallowing the same. The order shall contain the date of allowance and the amount allowed, the amount disallowed, and be attached to the claim with the offsets if any."

" SEC. 4522. In case of appeal from the allowance or disallowance of any claim in whole or in part, the District Court shall certify to the probate court the decision or judgment rendered therein."

Section 4665 provides for an appeal to the District Court.

Section 4668 provides for serving notice of appeal.

Section 4672 provides that the District Court shall try the case as if originally commenced in that court.

Section 4673 provides that pleadings shall be made up as in civil actions, and the issues of fact tried as in other actions.

Section 4676. In case of a reversal or modification of the order appealed from the District Court makes such order as the probate court should have made, and certifies its judgment to the probate court.

" Sec. 4730. The probate court may, at any time, correct, modify or amend its records to conform with the facts in the same manner as a District Court."

*State ex rel. Lindekugel* v. *Probate Court of Sibley County*, 33 Minnesota, 94, 96, was an application to the District Court for a writ of prohibition to the probate court, the latter court having granted a petition to set aside a sale of real estate confirmed by the probate court, and it was held by the Supreme Court of the State that there was no jurisdiction in the probate court, saying :

" The want of jurisdiction in this case is still further emphasized by the fact that the administration has been closed by the allowance of the administrator's accounts and his discharge, and there is no attempt to reopen it. So long as it remains closed the probate court has no more jurisdiction over the estate, or the property belonging to it, or which once belonged to it, than if there never had been any administration and there was no attempt to institute one. The jurisdiction of the court has been fully exhausted, and it can do nothing further unless it is restored in the manner pointed out in the statute."

In *State ex rel. Dana* v. *Probate Court of Ramsey County*, 40 Minnesota, 296, 299, where, upon an application for the final settlement of his accounts by the administrator of an estate and for a final discharge, the probate court made an order allowing the account and discharging the administrator, such order was held by the Supreme Court to be a final order discharging the administration of the estate, and that, as a final decree discharging the administration, it operated to discharge the lien of creditors upon real estate which might have been previously sold to pay debts. The opinion of the court was thus expressed :

" The object of the application on the part of the acting administrator was to submit his final account and close the administration. The order made was evidently so intended, and must be

construed as a final order discharging the administration of the estate. The parties had their remedy by appeal, but the order could not be attacked collaterally or treated as void, so as to warrant subsequent proceedings to reach the real estate, as if the administration was still in progress and the estate still unsettled.

" "The omission of the land from the inventory, and the subsequent discovery of the real estate of the deceased which was not reduced to assets by the administrator or distributed to the heirs, do not operate to revive the administration and open the judgment, or warrant further proceedings. The land descended to the heirs, subject to the claims of administration upon it. The effect of a decree assigning the real estate to the heirs is simply to discharge it from the administration, and, of course, the final discharge of the administration must discharge the lien of the creditors."

In *Schmidt* v. *Stark*, 61 Minnesota, 91, 92, it was held that where the estate of a deceased person has been fully administered, and a decree of distribution has been made, assigning the residue of the estate in the hands of the personal representative to the parties entitled thereto, the jurisdiction of the probate court is ended ; and, if the personal representative does not deliver the property to the distributees, they may bring an action against him in the District Court. It was said, per Mitchell, J. :

" The probate code neither authorizes nor provides for an assignment of any part of the estate of a deceased person until after the estate is fully administered. It contemplates but one decree of distribution, by which the entire residue of the estate shall be assigned to those entitled to it, specifying the proportion or part to which each is entitled. Gen. Stats. 1894, secs. 4639–4642. Read in the light of the statute and of the admissions of the answer, we think the complaint would fairly admit of being construed as alleging that all this had been duly done, and that the proportion of the estate assigned to plaintiff was an undivided fifth. If this was the state of facts, the jurisdiction of the probate court over the property had ended. The effect of a decree of distribution is to transfer the title to the personalty and the right of possession of the realty from the

personal representative to the distributees, devisees or heirs. The property then ceases to be the estate of the deceased person, and becomes the individual property of the distributees, with the full right of control and possession, and with the right of action for it against the personal representative if he does not deliver it to them. If such an action is necessary, resort must be had to some other forum, for the probate court has no further jurisdiction. *Hurley* v. *Hamilton*, 37 Minn. 160."

*State ex rel. Matteson* v. *Probate Court of Ramsey County*, 87 N. W. Rep. 783, is the last expression of the Supreme Court of Minnesota on this subject to which we have been referred. The syllabus, prepared by the court, is as follows:

"1. The probate code of this State makes no provision for the formal discharge of an administrator, but the necessary legal effect of an order of the probate court allowing the final account of the administrator and its final decree of distribution, assigning the whole of the estate to the heirs and distributees, is to remove the estate of the deceased from the jurisdiction of the court, and to render the office of administrator, which depends upon such jurisdiction, *functus officio.*

"2. After the estate has been so settled and assigned, and while the final decree of distribution remains unreversed and unmodified, the probate court has no jurisdiction to entertain a petition to issue a citation to the administrator requiring him to further account for the property belonging to the estate which is in his possession, or came into his possession."

The facts and law of the case were then stated in the opinion of the court:

"Sumner W. Matteson, a resident of the county of Ramsey, having real and personal property therein, died intestate on July 22, 1895. The Security Trust Company was duly appointed by the probate court of such county, on September 3, 1895, administrator of his estate; and it duly qualified as such, and duly filed in such court an inventory of such estate. The probate court, on the same day, by its order, which was duly published, limited the time for presenting claims against the estate to six months from the date of the order. All claims

against the estate presented to the court within the time
limited and allowed by the court were paid by the adminis-
trator in the due course of administration. Thereafter, and on
March 31, 1896, the administrator filed with the court its
petition, representing that it had fully administered the estate,
paid all the debts against the estate allowed by the court, and
the expenses of administration, and asking for the allowance
of its final account, and the distribution of the residue of
the estate to the persons entitled thereto. Such proceedings
were thereafter duly had upon the petition, that the court, on
April 27, 1896, allowed the final account of the administrator,
and made and entered its decree of distribution of the residue
of the estate, describing it, and thereby assigned the property
therein described and all other estate of the intestate in the
State of Minnesota to his heirs and distributees, naming them,
and determining the share of each. Afterwards, and on
November 21, 1896, the Security Trust Company filed with
the probate court its petition, representing that in drafting
such final decree certain clerical errors were made, stating
them, whereby certain parcels of real estate were erroneously
described therein, and other parcels omitted therefrom, and
praying that the decree be amended so as to correct the errors.
The court made its order so correcting the decree. Neither
the order allowing the administrator's account nor the final
decree of distribution has ever been opened or set aside. On
December 15, next following, all the heirs and distributees
named in the decree transferred and conveyed to the Matteson
estate, incorporated, all the property so assigned to them by
the final decree. But the Security Trust Company still has in
its possession and now holds certain stocks as collateral secu-
rity under a pledge made to it by the intestate for the payment
of a debt owed by him to it at the time of his death. The value
of the stocks exceeds the amount of the debt which they secured.
No order has ever been made by the probate court in terms
discharging the administrator. The Black River National
Bank, a non-resident creditor of the intestate, on January 4,
1897, made application to the probate court for leave to file its
claim against his estate, and have it allowed, and paid out of

the assets of the estate.   This was denied by the court for the reason that the administration of the estate had been closed, and the court had no further jurisdiction in the premises. Afterwards the bank and another non-resident creditor each brought an action on their respective claims, which had never been presented to the probate court, against the Trust Company, as administrator, in the Circuit Court of the United States for the District of Minnesota.   Such proceedings were had therein that judgment, on April 17, 1899, was rendered in favor of the plaintiff in each case for the full amount claimed against the administrator.   The court directed the judgments to be certified to the probate court as claims duly established against the estate of the intestate, and it was done, but the administrator refused to take any steps for the payment of either of the judgments.   Thereupon the relator herein presented to the probate court a petition asking it to issue a citation to the trust company, as such administrator, requiring it to file an account of any property in its possession belonging to such estate, and to report what disposition had been made of the property inventoried as belonging thereto, and to pay so much of the judgments as could be paid from such property.   The court refused to entertain the petition, or to make any order in the premises, for the sole reason that it had no jurisdiction to take other or further steps in the administration of the estate. The relator then sued out of the District Court for the county of Ramsey an alternative writ of mandamus based upon the facts here stated, which was directed to the probate court and the judge thereof.   The answer of the respondents was an admission of such facts, and upon them the District Court awarded judgment denying a peremptory writ of mandamus, and discharging the alternative writ.   The relator appealed from the judgment to this court.

"The question presented by these facts for our consideration relates solely to the legal effect of the final decree of distribution, assigning the residue of the estate of the decedent to the heirs and distributees, made by the probate court after the settlement and allowance of the final account of the administrator. Stated concretely, the question is: Did the jurisdiction of the

probate court over the estate in question cease, and the office of the administrator become *functus officio*, by force of the order of the court allowing the administrator's final account, and its final decree of distribution assigning the residue of the estate? We answer the question in the affirmative. The jurisdiction of the probate court in Minnesota is not conferred by the common law, nor by any statute of the State, but by our constitution, and is limited to ' jurisdiction over the estates of deceased persons and persons under guardianship.' Const. art. 6, sec. 7. It follows that in cases where a court of probate acquires jurisdiction over the estate of a particular decedent such jurisdiction is ended, and the office of administrator, which depends upon such jurisdiction, becomes *functus officio* whenever such estate passes by operation of law from its final control. No argument can make this obvious proposition clearer, for it is self-evident that, if the jurisdiction is limited to the estate of such deceased person, and the sole basis of such jurisdiction, the estate passes from its control, and the right to the possession and control thereof vests by operation of law in the heirs and distributees, it has no longer any jurisdiction in the premises. It is true that our probate code contains no provision for the formal discharge of an administrator, but the necessary theory and effect of its provisions as to the settlement of his account and the final decree of distribution, as interpreted by the repeated decisions of this court, are to divest the probate court of further jurisdiction when such final decree is made, and to render the office of administrator *functus officio*, unless such decree is set aside on motion, or reversed on appeal. A clear illustration of this proposition is found in the decision of this court in the case of *Hurley* v. *Hamilton*, 37 Minnesota, 160, holding that the probate court had no jurisdiction to entertain proceedings for the partition of the real estate of a decedent among the heirs and devisees after the administration was closed, and the land assigned to them in common by a final decree of distribution, for the reason that, when such decree was entered, the property passed out of the control of the court, and it had no further jurisdiction."

The court then proceeded to cite and approve previous de-

cisions, and particularly the language of Mitchell, J., in the case of *Schmidt* v. *Stark*, 61 Minnesota, 91, hereinbefore quoted. Other observations were made by the court pertinent to the case before us, as follows:

" It is, however, urged by counsel for the relator that the removal of the property, that is, the estate, from the jurisdiction of the probate court in nowise affects the continuance in office of the administrator of an estate. To hold otherwise, it is claimed, would be a divesting of the probate court of all authority to execute its decree of distribution, leaving the administrator in possession of the estate, and the heirs and distributees remediless. It necessarily follows from the concession of counsel, although not intended by him, that the office of administrator becomes *functus officio* when the estate is removed, as a result of the decree of distribution, from the jurisdiction of the court, for the office of administrator springs out of and depends for its continued existence upon the jurisdiction of the court over the estate. As well might it be claimed that the branch of a tree can live and put forth its leaves and blossoms after its roots are dead, as to claim that the office of administrator can survive the jurisdiction of the court over the estate of which administration was granted. It is not necessary for the probate court, if it could do so, to retain jurisdiction to enforce its final decree of distribution. The remedy of the distributees in case their respective shares of the residue of the estate are withheld from them by the administrator is an action in the District Court against him or against him and his bondsmen. *Schmidt* v. *Stark*, 61 Minnesota, 91; Gray, Probate Law, secs. 48, 628.

" It is further urged on behalf of the relator that neither the probate court nor the administrator considered that the allowance of the final account and the entry of the decree of distribution ended the jurisdiction of the court, for it afterwards, on the petition of the administrator, amended such decree. It is immaterial what they considered, for the view of either as to the effect of the decree could not change its legal result. The decree was corrected, not in the exercise of any jurisdiction over the estate, but by virtue of the power of the court to amend its records to conform with the facts; that is to make the records

speak truly as to the past official acts of the court. Gen. Stat. 1894, sec. 4730.

" Lastly, it is urged by the relator that the administrator still has certain stocks in its possession belonging to the estate, and that it may also have after-discovered personal property of the intestate which it has not disclosed to any one. There is no basis for this assumption in the admitted facts, except that the trust company holds certain stocks as collateral to secure its individual debt against the intestate. But, were it otherwise, the fact still remains that all such stocks and after-discovered property, if any, passed by the decree to the heirs and distributees, for it assigns to them, not only the property therein specifically described, but also all other estate of the deceased in the State of Minnesota. It follows that the probate court rightly declined to issue the citation."

Some criticism is made, in the brief of the defendant in error, of the decision of the Supreme Court of Minnesota in this case; that the issue was feigned and an imposition upon the Supreme Court, and that the purpose of the decision was to forestall the decision of this court.

If, indeed, the judgment of the Supreme Court in that case were relied on as adjudging a case which had already passed into judgment in the Circuit Court of the United States we might readily agree, as urged by the defendant in error, that the decision of the Supreme Court of Minnesota "should receive little, if any, weight, by this court in the consideration of this case." But that decision is cited and relied on by the plaintiff in error, not as an adjudication of the facts in controversy here, but as an interpretation of the statutes of the State. Cases may be found where a decision made by a state Supreme Court, even in exposition of state statutes, *after* the institution of litigation in a Federal court, wherein this court has refused to follow such a decision, if in it the state court has departed from its previous decisions, which were in force and relied upon by the Federal suitor. *Burgess* v. *Seligman*, 107 U S. 20, 33 ; *Carroll County* v. *Smith*, 111 U. S. 556.

Here, however, the Supreme Court of Minnesota, in its last opinion, did not depart from or modify its previous decisions

on the subject. On the contrary, it based its reasoning and conclusions upon its frequent previous decisions.

Nor are we permitted on the record in that case to impute to the parties therein an attempt to mislead the court or to improperly invoke its jurisdiction. The case seems to have gone before the probate court, the District Court and the Supreme Court, in the usual course of procedure, and the decision finally rendered by the Supreme Court must be received by us as a valid exposition of the law.

The conclusion to which we are brought, by an examination of the statutes of the State of Minnesota and of the decisions of the courts of that State in construing and applying them, is, that had a suit against an administrator of an estate been brought in the courts of that State, after the expiration of the period limited by the order of the probate court, in which creditors may present claims against the deceased for examination and allowance, and after an allowance of the administrator's final account, and a final decree of distribution, such suit could not have been maintained.

We are now to consider whether such a suit can be successfully maintained in a Federal court by a non-resident owner of a claim against the estate of a decedent.

Some general principles have become so well settled as to require only to be stated. One of these is that a foreign creditor may establish his debt in the courts of the United States against the personal representative of a decedent, notwithstanding the fact that the laws of the State relative to the administration and settlement of decedents' estates do in terms limit the right to establish such demands to a proceeding in the probate courts of the State. *Union Bank of Tennessee* v. *Jolly's Adm'rs*, 18 How. 503; *Lawrence* v. *Nelson*, 143 U. S. 215; *Byers* v. *McAuley*, 149 U. S. 608.

Another principle, equally well settled, is that the courts of the United States, in enforcing claims against executors and administrators of a decedent's estate, are administering the laws of the State of the domicile, and are bound by the same rules that govern the local tribunals. *Aspden* v. *Nixon*, 4 How. 467, 498.

" The Circuit Courts of the United States, with full equity powers, have jurisdiction over executors and administrators, where the parties are citizens of different States, and will enforce the same rules in the adjustment of claims against them that the local courts administer in favor of their own citizens." *Walker* v. *Walker's Ex'r*, 9 Wall. 743, 754.

In *Yonley* v. *Lavender*, 21 Wall. 276, it was decided that while a non-resident creditor may get a judgment in a Federal court against a resident administrator, and come in on the estate according to the law of the State for such payment as that law, marshalling the rights of creditors, awards to creditors of his class, yet he cannot, because he has obtained a judgment in a Federal court, issue execution and take precedence of other creditors who have no right to sue in the Federal courts, and if he do issue execution and sell lands, the sale is void.

The reasoning of this case is worthy of quotation :

" The several States of the Union necessarily have full control over the estates of deceased persons within their respective limits, and we see no ground on which the validity of the sale in question can be sustained. To sustain it would be in effect to nullify the administration laws of the State by giving to creditors out of the State greater privileges in the distribution of estates than creditors in the State enjoy. It is easy to see, if the non-resident creditor, by suing in the Federal courts of Arkansas, acquires a right to subject the assets of the estate to seizure and sale for the satisfaction of his debt, which he could not do by suing in the state court, that the whole estate, in case there were foreign creditors, might be swept away. Such a result would place the judgments of the Federal court on a higher grade than the judgments of the state court, necessarily produce conflict, and render the State powerless in a matter over which she has confessedly full control. Besides this it would give to the contract of a foreign creditor made in Arkansas a wider scope than a similar contract made in the same State by the same debtor with a home creditor. The home creditor would have to await the due course of administration for the payment of his debt, while the foreign creditor could, as soon as he got his judgment, seize and sell the estate of his

debtor to satisfy it, and this, too, when the laws of the State in force when both contracts were made provided another mode for the compulsory payment of the debt. Such a difference is manifestly unjust and cannot be supported. . . . The administration laws of Arkansas are not merely rules of practice for the courts, but laws limiting the rights of parties, and will be observed by the Federal courts in the enforcement of individual rights. . . . It is possible, though not probable, that state legislation on the subject of the estates of decedents might be purposely framed so as to discriminate injuriously against the creditor living outside of the State; but if this should unfortunately ever happen the courts of the United States would find a way, in a proper case, to arrest the discrimination, and to enforce equality of privileges among all classes of claimants, even if the estate were seized by operation of law and entrusted to a particular jurisdiction."

In *Morgan* v. *Hamlet*, 113 U. S. 449, it was held that the statute of Arkansas, that "all demands not exhibited to the executor or administrator, as required by this act, before the end of two years from the granting of letters, shall be forever barred," begins, on the granting of letters of administration, to run against persons under age out of the State.

The doctrine of the case of *Yonley* v. *Lavender*, 21 Wall. 276, was approved in *Byers* v. *McAuley*, 149 U. S. 608, 615, wherein it was held that the administration laws of a State are not merely rules of practice for the courts, but laws limiting the rights of parties, to be observed by the Federal courts in the enforcement of individual rights.

In *Pulliam* v. *Pulliam*, 10 Fed. Rep. 53, 78, the distinction between ordinary statutes of limitation and statutes of administration of the estates of decedents limiting the time within which creditors must prove their claims, is pointed out in the respect that the latter are rules of property as well as statutes of limitation, and it was said by Hammond, J., after citing *Union Bank* v. *Jolly's Adm'rs*, 18 How. 503, 504; *Payne* v. *Hook*, 7 Wall. 425, 430, and other cases :

"These cases, like many others, are only intended to protect the judicial power of the United States from encroachment by

preserving to it the remedies and forms of proceeding which are granted with it, and not at all to set it above the legislative control of the States in matters pertaining to their jurisdiction. The cases cited from the Supreme Court do not, in my judgment, establish or in the least authorize the doctrine that state statutes, prescribing the time within which the creditor of a decedent must present or sue upon his claim in order to entitle him to share in the assets, and having the effect these do, are not binding on this court."

In *Dodd* v. *Ghiselin*, 27 Fed. Rep. 405, involving the administration of a decedent's estate, it was contended that non-resident minors had a right to have the laws of the State of Missouri regulating the matter disregarded in the Federal court, but it was held otherwise, per Brewer, J.: That the law of the State providing for the settlement of a deceased person's estate is binding upon the Federal as well as upon the state courts.

In *Miner* v. *Aylesworth*, 18 Fed. Rep. 199, it was held by the Circuit Court of the United States for the District of Rhode Island, as against non-resident complainants, that, under the Rhode Island statute, no suit can be commenced against an administrator, as such, after three years from the time he gave public notice of his appointment. *Bauserman* v. *Blunt*, 147 U. S. 647, 652.

Applying these principles to the present case, it would seem clear that the defendant in error, as a citizen of the State of New York, and having a legal claim against the estate of S. W. Matteson, deceased, had a right to elect to proceed to establish it by bringing a suit in the Circuit Court of the United States; and if he had brought his action against an existing administrator, the administration of the estate not having been closed under the statutory proceedings, and obtained a judgment, undoubtedly such a judgment, when presented to the probate court within the time fixed by its order, must have been received by that court as a claim against the unadministered estate.

But can it be said that, if the foreign creditor delays proceedings in the Federal court until after the time fixed by the

order of the probate court for the presentment of claims had expired and after the final distribution of the estate had been effected, and after the final account of the administrator had been allowed and his office had become *functus officio,* and after all claims of local creditors had thus been precluded, he can use the Federal process to devolve a new responsibility upon the person who had acted as administrator, and to interfere with the rights of other parties, creditors or distributees, which had become vested under the regular and orderly administration of the estate under the laws of the State?

It is the policy of the State of Minnesota, like that of many of the States, to prescribe a shorter term of limitations to claims against the estates of decedents than claims against living persons. Can that policy be defeated by a ruling of the Federal courts that the provisions of the State in that regard do not apply to parties bringing suit in those courts? In that event, the very mischief pointed out and deprecated in *Yonley* v. *Lavender* would ensue, that "The rights of those interested in the estate who are citizens of the State where the administration is conducted are materially changed, and the limitation which governs them does not apply to the fortunate creditor who happens to be a citizen of another State." The answer given to such a proposition by this court in the case just cited was : "This cannot be so. The administration laws of Arkansas are not merely rules of practice for the courts, but laws limiting the rights of parties, and will be observed by the Federal courts in the enforcement of individual rights."

Let us now examine the reasoning employed by the Circuit Court of Appeals in reaching its conclusion in the present case. Having correctly held that, so far as the administration law of the State of Minnesota attempts to compel citizens of other States to establish demands against the estates of decedents only by a proceeding in the probate court of the State, it is ineffectual to accomplish that object, the court proceeded to say :

"It is said, however, that although the statute in question may be ineffectual to compel non-resident creditors to submit their demands to the appropriate probate court for allowance,

yet, as a statute of limitations, it should be given effect to pre-
vent the establishment of a demand in the Federal court of the
State after such lapse of time that it cannot be established in
the probate court. The vice of this argument, as applied to
the case in hand, consists in the fact that the legislature of the
State of Minnesota has not undertaken to bar any claim against
a decedent's estate, absolutely, until after the lapse of eighteen
months from the date of the order fixing the period of allow-
ance, and in the case at bar that period had not expired when
the action was commenced, to wit, on January 22, 1897. It
is true that section 4509, when conferring the discretionary
power to allow claims within eighteen months, imposes the
limitation that they shall be allowed ' before final settlement,'
and it is also true that the final account of Matteson's adminis-
trator had been submitted to and approved by the probate
court before this action was commenced. But it must be borne
in mind that the administration law, section 4523, confers upon
the probate court the power to determine when the final settle-
ment of an estate shall be made, and to allow as much as one
year and six months for that purpose. We think that the Fed-
eral court must be conceded the same power, as respects the
claim of a non-resident creditor, to allow it within eighteen
months, which is conferred upon the probate courts of the State;
and we are furthermore of opinion that the right of a non-resi-
dent creditor to sue for the establishment of his demand in the
Federal court cannot be made to depend on the length of time
that the probate court happens to allow for making a final set-
tlement. If the Federal court gives effect to laws limiting the
period for establishing claims in the probate courts of the State,
which differ essentially from the general statute of limitations,
it should only be required to apply the absolute bar arising
from lapse of time which the legislature has erected. There
is much reason, perhaps, for saying that citizens of other States
ought not to be allowed to maintain an action in the Federal
court against a local administrator or executor after the ex-
piration of a period when, by the express command of the legis-
lature, no such action can be maintained in the local courts,
provided the period fixed by the legislature is reasonable; but

the right of a non-resident creditor to bring his action in the national courts ought not to be conditioned or made to depend upon the time that a local court chances to approve a final settlement, when the time of such approval rests in its discretion, and is largely a matter of convenience. For these reasons, we conclude that the case in hand, the same having been brought within less than eighteen months after the order fixing the period for the allowance of claims was made, was lawfully entertained by the trial court.

"Another claim which is interposed by the administrator as a defence to this action is that the approval of its final account and the order of distribution made thereon by the probate court on April 27, 1896, closed the administration, and operated, without more, as a discharge of the administrator, so that there was in point of fact no administrator when the suit at bar was instituted. This view evidently was not entertained by the probate court by which the administrator was appointed, since the record discloses that that court, as late as November 21, 1896, entertained a petition on the part of the administrator, and at its instance made an order, founded thereon, by which the decree of April 27, 1896, was amended and corrected in important respects. It is manifest that the probate court acted upon the theory that it had not lost jurisdiction over the administrator, that it was still subject to its orders as to all matters pertaining to the estate, and would remain so until it had fully executed its decree and was formally discharged as administrator by an order made to that effect. And this assumption, on which the probate court appears to have acted, in our opinion was entirely correct. The order of distribution that was made on April 27, 1896, required certain acts to be done and performed by the trust company in its capacity as administrator, and until they had been done and performed, and the court had approved of the administrator's acts in that behalf, it was clearly subject to the orders of the probate court, and its functions as administrator had not ceased. The view contended for by the administrator is entirely untenable, since it would deny to the probate courts of the State the right to enforce such orders relative to the distribution of estates as they may see fit to

make, leaving administrators, when final settlements are approved, in full possession of all the property then in their hands, and at liberty to deal with it as they please until they are called to account by some other tribunal than that from which they originally derived their authority. We are satisfied, therefore, that under the laws of the State of Minnesota the approval of a final settlement, and an order of distribution made thereon, does not operate forthwith to discharge the administrator, but that its effect is to give the distributees a right to the possession of the property that has been assigned to them and a right to invoke the power of the probate court, as against the administrator, to compel obedience to its orders."

The validity of this reasoning depends, of course, upon the correctness of the construction put by the learned court on the state statutes; and, we as we have seen, in the cases cited, the Supreme Court of the State has placed an altogether different meaning on those statutes. They hold that the probate code of the State makes no provision for the formal discharge of an administrator, but the necessary legal effect of an order of the probate court, allowing the final account of the administrator and its final decree of distribution, assigning the whole of the estate to the heirs and distributees, is to remove the estate of the deceased from the jurisdiction of the court, and to render the office of administrator, which depends upon such jurisdiction, *functus officio*; and that, after the estate has been so settled and assigned, and while the final decree of distribution remains unreversed and unmodified, the probate court has no jurisdiction to entertain a petition to issue a citation to the administrator requiring him to further account for the property belonging to the estate, which is in his possession, or came into his possession.

Adopting, then, the construction put upon the administration laws of Minnesota, by the Supreme Court of the State, we have only to consider the force of certain other suggestions of the court below, which are, in some measure, independent of those already considered.

It is argued, in the opinion of the Circuit Court of Appeals, that, because section 4523 confers upon the probate court the

power to determine when the final settlement of an estate shall be made, and to allow as much as one year and six months for that purpose, the Federal court must be conceded the same power as respects the claim of a non-resident creditor, to allow it within the eighteen months, which is conferred upon the probate courts of the State. This suggestion is manifestly based on a misconception of the language and legal purport of section 4523. That language is as follows: "The probate court at the time of granting letters testamentary or of administration shall make an order allowing to the executor or administrator a reasonable time, not exceeding one year and six months, for the settlement of the estate."

So that, expressly the time for the settlement of the estate must be fixed by the probate court at the time when the letters of administration are granted, and it is provided, by the following section, that "the probate court may, upon good cause shown by the executor or administrator, extend the time for the settlement of the estate not exceeding one year at a time, unless in the judgment of the court a longer time be necessary."

These sections have nothing to do with the limitation prescribed for the proof or presentation of the claims of creditors, which is found in section 4509. Moreover, in the present case, the court having fixed the period of six months within which the estate should be settled, the administrator, accordingly, having no good cause to show to the contrary, filed his final account of the settlement of the estate within the time so limited, and the account was allowed and the final decree of distribution made before the institution of the present suit.

Section 4509 provides that, at the time of the granting letters testamentary or of administration, the court shall make an order limiting the time in which creditors may present claims against the deceased for examination and allowance, which shall not be less than six months nor more than one year from the date of such order, and that no claim or demand shall be received after the expiration of the time so limited, unless, for good cause shown, the court may, in its discretion, receive, hear and allow such claim upon notice to the executor or administrator.

But it should be observed that such power to extend the time limit must be exercised, on good cause shown, "before final settlement," and, in the present case, no such good cause was shown, either to the probate court or to the Circuit Court of the United States, before final settlement. It is evident that the discretion to extend the time for proof of claims was to be appealed to for some good reason, that is, reason showing why the claim was not made or the suit brought before the expiration of the time fixed in the original order.

The Circuit Court of Appeals admits that "there is much reason for saying that citizens of other States ought not to be allowed to maintain an action in the Federal court against a local executor or administrator after the expiration of a period when, by the express command of the legislature, no such action can be maintained in the local courts, provided the period fixed by the legislature is reasonable, but the right of a non-resident creditor to bring his action in the national courts ought not to be conditioned or made to depend upon the time that a local court chances to approve a final settlement when the time of such approval rests in its discretion and is largely a matter of convenience." But the legislation of Minnesota does not make the limit within which claims must be made against the estates of decedents to depend on the exercise of discretionary power by the courts. It does provide that the probate court shall fix a time within which claims must be presented, to wit, not less than six nor more than eighteen months. Between those limits of six and eighteen months the probate court may have power of discretionary action on good cause shown. But having once exercised that power, as in the present case, by fixing the term of probation at six months, any extension of that term could only be had, upon good cause shown, "before final settlement."

We are not called upon, by the facts of the present case, to determine whether a Federal court might or might not, on good cause shown, extend the time in which a claim might be asserted against a decedent's estate beyond the term previously fixed by the probate court. But it is sufficient to say that, in the present case, no application was made to the Federal court to exercise such a power, either before or after the limitation prescribed

under the state statute had expired. All that was before the Circuit Court of the United States was an action at law upon a cause of action against a decedent's estate, which, under the laws of the State of Minnesota, could not be maintained in the courts of that State, because barred by the operation of the laws of the State regulating the administration of the estates of deceased persons. Moreover, it is obvious, and it has always been held, that the Circuit Court cannot, in the trial of an action at law, exercise the power of a court of equity. An application to the Federal court to decree an extension of time beyond the period previously prescribed by the probate court would have to be made by a bill in equity, showing good cause. *Scott* v. *Armstrong*, 146 U. S. 499.

Following our previous and repeated decisions, that the courts of the United States, when exercising jurisdiction over executors and administrators of the estates of decedents within a State, are administering the laws of that State, and are bound by the same rules which govern the local tribunals, we conclude, in the present case, that

> *The judgment of the Circuit Court of Appeals must be reversed ; the judgment of the Circuit Court is also reversed, and the cause is remanded to that court, with directions to enter judgment in conformity with the opinion of this court.*