WARD v. INTEGRITY TRUST CO. et al.

No. 9551.

District Court, E. D. Pennsylvania.

Nov. 24, 1936.

Herbert S. Levin, of Philadelphia, Pa., for plaintiff.

Edward A. Collins, Jr., of Philadelphia, Pa., for Mamie Robb.

Edgar S. McKaig, of Philadelphia, Pa., for Integrity Trust Co.

MARIS, District Judge.

These are separate motions by Integrity Trust Company and Mamie Robb, two of the defendants, to dismiss a bill in equity brought against them by the receiver of the Lehigh National Bank of Philadelphia. For the purpose of determining these motions we must take as true the facts averred in the bill. These facts are as follows:

On January 2, 1933, William Gleason died, the registered owner of 100 shares of stock of the Lehigh National Bank. He left a will, by which he bequeathed his residuary estate to Mrs. Mamie Robb and appointed Integrity Trust Company as his executor. The will was probated January 9, 1933, and the Integrity Trust Company qualified as executor. On March 1, 1933, the Lehigh National Bank suspended business. There is no averment that it ever reopened. On April 4, 1933, the Integrity Trust Company, as executor, filed an inventory and appraisement of the estate of William Gleason, deceased, listing said 100 shares of stock of the Lehigh National Bank at a value of $2.50 per share, the par thereof being $10 per share. On September 11, 1933, the Integrity Trust Company filed its account as executor in which said shares of stock were included. On

October 25, 1933, its account was confirmed nisi by the orphans' court of Philadelphia · county, Pa., the court approving a suggested distribution of the assets of the estate as follows:

"(a) To Respondent Mamie Robb, by agreement, $4500.00, including the said 100 shares of bank stock, at a valuation of $2.50 per ·share; and

"(b) To Respondent Elizabeth Gleason, by agreement, $4500.00."

Under the rules of the orphans' court absolute confirmation follows at the expiration of fifteen days if no exceptions are filed. Subsequent to October 25, 1933, the foregoing distribution was made by Integrity Trust Company, and Mamie Robb and Elizabeth Gleason each received their respective shares thereof, although the said shares of bank stock were not transferred into the name of Mamie Robb on the books of the bank, but still remained registered in the name of William Gleason, the decedent. On November 3, 1933, the Comptroller of the Currency adjudged the Lehigh National Bank insolvent and appointed a receiver for it, and on February 14, 1934, the Comptroller. made an assessment upon the shareholders of the bank amounting to 100 per cent. of the par value of their shares. The plaintiff, W. B. Ward, was appointed receiver of the bank by the Comptroller of the Currency on June 15, 1936.

On October 2, 1936, he filed the present bill in equity setting up the facts above recited. On these facts he avers that the sum of $1,000, the amount of the assessment upon the said shares of stock, is due and owing to him by the Integrity Trust Company individually because as executor it wrongfully paid to Mamie Robb and Elizabeth Gleason the sum of $9,000 out of the assets of the estate when it knew, or should have known, that the estate would become responsible for an assessment, if one were made, upon the said shares of stock. He also avers that that sum is due and owing by Mamie Robb and Elizabeth Gleason because all of the property of the estate of William Gleason, deceased, wherever found and into whose hands traced, is liable for the amount of the said assessment. The bill prays that the amount of the assessment be declared a lien upon all the estate of William Gleason received by the respondents, that the respondents be restrained from spending or disposing of any part of the said estate

held by them or any of them, and that the respondents· jointly and severally be decreed and ·ordered to pay to the plaintiff the said sum of $1,000. Respondent Elizabeth Gleason was not served. The other two respondents, Mamie Robb and Integrity Trust Company, filed separate motions to dismiss the bill. These we will consider separately.

■ Mrs. Robb's motion to dismiss raises the question whether the bill has set forth a cause of action against her. The relief sought by the bill as to her is essentially for a decree impressing the assets of the estate in her hands as distributee with the lien of the plaintiff's claim. In other words, the plaintiff seeks to collect the assessment made against the estate from the beneficiaries to whom all the assets of the estate were distributed prior to the time the assessment was made. Section 49· (d) of the Pennsylvania Fiduciaries Act of 1917 (20 P.S.Pa. § 864) provides that "no creditor of a decedent who shall neglect or refuse to present his claim at the audit of the account of the executor or administrator, held not less than six months after the grant of letters testamentary or of administration, of which public notice has been given as provided in section ten of this act, * * * shall be entitled to receive any share of the assets distributed in pursuance of such audit." The Pennsylvania courts have long held that neither an executor or administrator, nor an unpaid creditor of a decedent's estate, is entitled to recover back from a distributee an amount voluntarily paid him in distribution, much less an amount paid under a decree of distribution. In re Fitzgerald's Estate, 266 Pa. 321, 109 A. 635; In re Piper's Estate, 208 Pa. 636, 57 A. 1118; Montgomery's Appeal, 92 Pa. 202, 37 Am. Rep. 670.

■ In the present case the distribution was made to Mrs. Robb pursuant to a decree of distribution of the orphans' court more than three months before the assessment was made by the Comptroller. Under these circumstances it is clear that under the law of Pennsylvania the plaintiff receiver cannot follow the assets of the estate into the distributee's hands. This law bars collection of the plaintiff receiver's claim from Mrs. Robb as distributee. Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457. In that case the Supreme Court pointed out that in the absence of federal enactments

relating to procedure for enforcement of the liability of the stockholder of a national bank, collection is to be made in accordance with state laws governing claims against estates of deceased persons, at least to the extent that such laws are not inconsistent with enforcement of the liability imposed by national authority. That case involved an assessment made against the estate of a Utah decedent. The Utah statute (Rev.St.1933, 102-9-28) provided that, "when the accounts of the administrator or executor have been settled and an order made for the payment of debts and distribution of the estate, no creditor whose claim was not included in the order for payment has any right to call upon the creditors who have been paid, or upon the heirs, devisees or legatees, to contribute to the payment of his claim." In the light of that statutory provision, the Supreme Court held that the distributees of the estate of a deceased national bank stockholder were not liable for an assessment upon his shares which was made after the estate had been fully distributed and closed under the Utah law. It will be seen that the law of Pennsylvania is substantially the same as the law of Utah upon this question and Forrest v. Jack, supra, is therefore controlling authority. The cases of Matteson v. Dent, 176 U.S. 521, 20 S. Ct. 419, 44 L.Ed. 571, and Seabury v. Green, 294 U.S. 165, 55 S.Ct. 373, 79 L. Ed. 834, 96 A.L.R. 1463, which involved similar situations arising in Minnesota and South Carolina, respectively, are clearly distinguishable because the laws of those states appear to permit an unpaid creditor to follow assets of a decedent's estate in the hands of a distributee after final distribution and winding up of the estate. In all these cases the Supreme Court has held the local law as to the distribution and settlement of estates to be controlling. Hulburd v. Commissioner, 296 U.S. 300, at page 315, 56 S.Ct. 197, 204, 80 L.Ed. 242, in which Mr. Justice Cardozo said: "The controversy in this aspect is one of local law, which, once it is ascertained, must be accepted as controlling. Security Trust Co. v. Black River National Bank, supra [187 U.S. 211, 23 S.Ct. 52, 47 L.Ed. 147]; Forrest v. Jack, 294 U.S. 158, 55 S. Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457; Seabury v. Green, 294 U.S. 165, 55 S.Ct. 373, 79 L.Ed. 834, 96 A.L.R. 1463."

It follows that the plaintiff has not stated a cause of action in equity against Mrs. Robb and the bill must be dismissed as to her.

The bill does aver, however, that the shares of stock of the Lehigh National Bank in question were awarded and distributed to and received by her in October, 1933, over three months before the assessment was made. It appears from the bill that these shares were never registered in her name on the books of the bank, however, and it may be that they were not accepted by her. If, however, she became the actual owner of the shares, even though they were not registered in her name, she would be liable for the assessment. Early v. Richardson, 280 U. S. 496, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L. R. 658; Collins v. Caldwell (C.C.A.) 29 F.(2d) 329. If so liable, however, an action for the recovery of the assessment against her would not be cognizable in equity. Hale v. Allinson, 188 U.S. 56, 23 S.Ct. 244, 47 L.Ed. 380. The dismissal of the bill as to Mrs. Robb will, therefore, be without prejudice to the right of the plaintiff to bring an action at law against her for the amount of the assessment if she became the actual owner of the shares in question. Witters v. Sowles (C.C.) 32 F. 130.

The motion of the Integrity Trust Company to dismiss the bill as to it remains for consideration. The statute under which the assessment was made upon the stockholders of the Lehigh National Bank provides that persons holding stock as executors shall not be personally subject to any liabilities as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator would be if living. 12 U.S.C. § 66 (12 U.S.C.A. § 66). An executor is, therefore, ordinarily not personally liable for such an assessment. Nevertheless, it has been held that an executor who settles an estate without making provision for or disposing of the liability imposed by the statute may, in a proper action seasonably brought, be held personally liable for devastavit. Miller v. Hamner (C.C.A.) 269 F. 891, 895; Gilbertson v. McCarthy (C.C.A.) 32 F.(2d) 665, 668; Luce v. Thompson (C.C.A.) 36 F.(2d) 183, 186. The contention of the plaintiff in the present case is that the Integrity Trust Company was guilty of just such a devastavit and is, therefore, personally liable for the amount of the assessment. This brings us to the consideration

of the circumstances under which an executor may be held liable for such a devastavit.

■ It is clear that in the absence of knowledge or reason to believe that a bank is or is likely to become insolvent and its stock held by the estate subject to assessment, the executor has no duty beyond distributing the assets of the estate under the order of the court having jurisdiction. Koenig v. Fluke (C.C.A.) 82 F.(2d) 559. However, when a bank, the stock of which is held by an executor as part of a decedent's estate, fails, the estate in his possession is charged with an equitable lien for the assessment made upon the stock, Drain v. Stough (C.C.A.) 61 F.(2d) 668, 87 A.L.R. 490, which lien attaches to the estate in the hands of the executor from the date of the failure of the bank, even though the assessment is not made until later. Zimmerman v. Carpenter (C.C.) 84 F. 747; Rankin v. Miller (D.C.) 207 F. 602. We think it follows that from the date of failure of a national bank an executor holding its stock must be charged with knowledge that the bank is or is likely to become insolvent and its stock subject to assessment. It therefore becomes his duty in the settlement and distribution of the estate to take reasonably appropriate steps to make provision for the liability imposed by the statute and which is likely to mature through an assessment by the Comptroller.

■ Just when the failure of a bank takes place may perhaps be a question of fact, but it would seem reasonable to hold that a bank which closed its doors never to reopen failed on the date of closing so that the equitable lien above referred to attached on that date. Just what steps an executor ought to take to make provision for the assessment liability may also be a question to be determined in the light of the facts of each particular case, but at the least it would appear that he should notify the Comptroller of the Currency, or his deputy in charge of the bank, of the date when his account will be settled by the court and distribution awarded in order to give that official an oppportunity to protect the interests of the creditors of the bank. It would also seem reasonable that the executor should inform the court of the existence of the contingent liability for the assessment and suggest that the court set aside from distribution a sum sufficient to meet the liability if it should

mature. This is proper Pennsylvania practice. Bumm's Estate, 8 Pa.Dist.R. 191; In re Nagle's Estate, 305 Pa. 36, 156 A. 309.

■ Whether the Integrity Trust Company took reasonable steps to make provision for the contingent liability upon the shares of stock of the Lehigh National Bank which it held does not appear from the averments of the bill. It does appear, however, that the bank suspended payment on March 1, 1933, months before the estate was wound up, and that in April the trust company filed its inventory and appraisement in which it valued the shares at one-fourth of their par value. It is therefore clear that the trust company knew or had reason to believe that the bank was or was likely to become insolvent and its stock subject to assessment. It also appears that the actual distribution of the assets of the estate did not take place until about the time the Comptroller declared the bank insolvent and appointed a receiver for it. The trust company, however, proceeded to distribute all of the assets of the estate without reserving any for the contingent stock liability. Apparently, however, it did not secure a transfer of the bank's shares to Mrs. Robb, the distributee to whom they were awarded. It may be that Mrs. Robb became the actual owner thereof, even though they were not registered in her name. If she did not, however, we have a situation where the executor failed to relieve the estate of the contingent stock liability through the substitution of a new solvent owner while at the same time it permitted itself to be denuded of all other assets of the estate from which the liability might be paid. Such action on the part of an executor after the failure of a bank would indicate a lack of regard for the rights of the creditors of the bank and would in our opinion subject him to personal liability for a devastavit when the assessment is afterwards made.

■ It will thus be seen that there are in the present bill averments sufficient, if supported by evidence at the trial, to establish a cause of action against the trust company upon the ground of a devastavit, and its motion to dismiss the bill must therefore be denied. The cause of action so disclosed is, however, one cognizable at law and not in equity, and the suit against the Integrity Trust Company must therefore be transferred to the law side of the

court under Equity Rule 22 (28 U.S.C.A. following section 723).

The motion of Mamie Robb to dismiss the bill as to her is granted, without prejudice to the right of the plaintiff to bring his action at law against her if she became the actual owner of the shares of bank stock in question. The motion of the Integrity Trust Company to dismiss the bill as against it is denied, and the suit against it is transferred to the law side of the court with leave to the said defendant to file an answer to the bill within twenty days.